**UNITED STATES of America,**
**Appellee,**

v.

**Skippy HOUSE, alias Larry Latimer,**
**Defendant, Appellant.**

**No. 71–1390.**

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1972.

Decided Jan. 10, 1973.

Barry H. Gerstein, Boston, Mass. with whom Gerstein & Weiner Boston, Mass. was on brief, for appellant.

Frederic R. Kellogg, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant Skippy House was tried before a jury and convicted on one count of selling heroin on August 3, 1971, in violation of 21 U.S.C. § 841(a)(1), and on another count of conspiring with four others to sell heroin between July 22 and August 6 of that year, in violation of 21 U.S.C. § 846. The principal testimony was that of Philip Cramer, a paid informant of the Federal Bureau of Narcotics who had been an addict until shortly before his employment by the government, and of Carol Sander, who was charged as a co-conspirator of appellant. The charge to the jury contained no cautionary instructions concerning testimony by an informant or accomplice. While no request was made for such instructions, appellant now alleges that failure to give such constituted plain error. The issue compels us to make a careful review of the testimony of the two principal witnesses.

The evidence showed that Cramer, the informant, made several visits to Roxbury, Massachusetts, to arrange for the purchase of heroin. Relevant to the substantive count, the informant said that he was specifically ordered to attempt a "buy" from appellant and that on August 3, while standing on a street in Roxbury, he flagged down appellant who was passing in a red convertible. He then asked appellant for some heroin, who replied with a question as to who told the informant to see him. The informant answered that Carol Sander had told him

to contact appellant, whereupon appellant left his car and crossed the street to talk to Sander who was standing nearby. After a short conversation, appellant walked down the block and spoke with Mickey Harris, another alleged co-conspirator, and then returned to the informant, telling him to wait a few minutes for appellant to get the heroin. Appellant drove off, returned in ten minutes, and called Harris to his car. Harris then returned to a card game holding a brown paper bag, after which appellant told the informant that any further business should be done through Harris. After appellant left the scene, Harris and the informant drove away to meet two government undercover agents who paid Harris for the heroin contained in the brown bag. Government agents testified to appellant's presence in the area that day, but did not see the informant and appellant together.

The crucial aspects of this evidence were controverted. Appellant admitted being stopped by the informant, but claimed that he told the informant to stay away from him as he did not deal with drugs but to see Harris if he was interested in heroin. Entries in the informant's notebook refer to his discussion with appellant immediately after appellant stopped his car, and to the subsequent conversation between the informant and Harris. There is no mention of the intervening episode in which appellant left and returned with the heroin. Sander testified that she engaged in conversation with appellant on August 3, but did not say what the substance of the conversation was. Thus the conviction for the sale was based almost totally on the testimony of the informant.

The conspiracy conviction focuses upon the events of July 29, August 3, as discussed previously, and August 6. As to July 29, the informant testified that while driving around Roxbury in search of a buy from one Jim Peddy, he noticed Sander and appellant talking on the steps of Sander's home. He stopped his car and called Sander over, telling her that he sought some heroin. She returned to the porch and had a short conversation with appellant. Sander testified that appellant stated, in response to a question by her, that he would deal with the informant. She claimed that she retrieved some heroin in the hallway of her home, and that she thought appellant told her that the heroin was in that location. She then brought the heroin to the informant and said, "The price is all right", whereupon they both drove off to meet government undercover agents who paid Sander $460. The agents and the informant stated that Sander, when asked if the bag of heroin was full, replied that, "Jimmy [Peddy] always gives a full bundle." After denying several times that she said that Peddy, who was her boyfriend, "always gives a full bundle", Sander admitted to that statement, while alleging that she turned over the $460 given to her by the agents to appellant. Appellant admitted speaking with Sander on that date, but denied any role in the sale. Besides providing evidence of an agreemnt in the conspiracy, this incident constituted an overt act relevant to the government's case. The sale on August 6—the last incident—was made by Harris to government undercover agent Duffy and did not involve appellant. It too is relevant as proof of an overt act.

Appellant's trial counsel neither tendered any instructions nor objected to those given by the court. Yet appellant now alleges that the failure of the trial judge to give cautionary instructions to the effect that the testimony of both the informant, Cramer, and the accomplice, Sander, should be weighed carefully because of their respective interests in the case constitutes plain error affecting substantial rights. F.R.Crim.P. 52(b). As we have said, for a claim of this sort to prevail on appeal "[T]he circumstances must be 'exceptional' and the error must be such as to prejudice 'in a substantial manner appellant's right to a fair trial.'" McMillen v. United States, 386 F.2d 29 (1st Cir. 1967), cert denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288.

We have carefully read the record in this case and agree with counsel for the government that it is crucial to the conviction on the substantive count that the jury believe the testimony of the informant which was essentially uncorroborated in the "material point[s]." *See* United States v. Kinnard, 150 U.S. App.D.C. 386, 387, 465 F.2d 566, 567 (1972). Though the jury is the best judge of credibility, we think it signficant that the informant's testimony was, on its face, generally consistent and credible. Thus, it is sufficient, by itself, to support the conviction. United States v. Miceli, 446 F.2d 256 (1st Cir. 1971). Even in the absence of a cautionary informant instruction, uncorroborated informant testimony which is not "incredible or otherwise unsubstantial on its face" will sustain a conviction. United States v. Strauss, 443 F.2d 986 (1st Cir. 1971), cert. denied, 404 U.S. 851, 92 S. Ct. 87, 30 L.Ed.2d 90; Davis v. United States, 411 F.2d 1126 (5th Cir. 1969); United States v. Smith, 459 F.2d 12 (4th Cir. 1972). We recognize that the Tenth Circuit adopts an error per se rule when cautionary instructions are not given when accomplice testimony is uncorroborated even though facially consistent and credible. United States v. Owens, 460 F.2d 268 (10th Cir. 1972). As we shall note, while this has much to recommend it, for the time being we prefer not to take this step but prefer to call the attention of the district courts in this circuit to the prudence of giving, whether requested or not, cautionary instructions where the government predominantly relies on informants or accomplices.

Appellant's conviction on the conspiracy count must also be upheld on the same analysis. Had the conspiracy conviction rested solely upon the testimony of Sander, we would have had to reverse. Though she and her attorney stated that she had not been given any promises in an effort to induce her to testify against appellant, she may well have been motivated to place all blame for the July 29 heroin sale on appellant in order to exculpate Peddy, her boyfriend and alleged co-conspirator. More importantly, her testimony was internally inconsistent and contradictory. Several times she denied ever having said to the undercover agents and the informant that "Jimmy always gives a full bundle", even after having been told that those other witnesses had already so testified. Reluctantly, she changed her response. Originally when asked if appellant replied to her suggestion that he deal with the informant on July 29 Sander replied, "I forget what happened at the time", though immediately thereafter she could say, "I think he said 'Yes' ". Also she could do no better than "think" that appellant had told her where the heroin was kept, in the hallway of her home, though she did not see him put it there nor could she recall how it got there. These responses and the general tenor of her testimony "cast such a considerable cloud on the reliability of [that] testimony", Williamson v. United States, 332 F.2d 123, 130 (5th Cir. 1964), so as to make most of it "incredible". Thus, if Sander's testimony alone were the basis for the conspiracy conviction, it would have been plain error not to have given an accomplice instruction.

However, if Sander's testimony is ignored, we think that the consistent and credible testimony of the informant is, even without an informant instruction, sufficient by itself to support the conspiracy conviction and is corroborated by other independent evidence. Appellant himself admitted that on August 3 he told the informant to see Harris for heroin sales, this testimony corroborating in part that of the informant. On August 6 it was agent Duffy who purchased heroin from Harris, this incident serving as proof of an overt act in the conspiracy. Thus appellant's conviction on the conspiracy count can stand.

This is a case where we are able to say with some certainty that manifest injustice has not occurred. We recognize that our present position declining to find plain error for failure to give an unrequested cautionary instruction

where the government's case largely depends on uncorroborated informant or accomplice testimony, so long as such testimony looks internally consistent and credible, puts us in the uncomfortable position of reviewing lengthy transcripts to determine the extent of reliance on such testimony and its surface credibility and substantiality. The burden in the trial court of routinely including a cautionary instruction in cases dominated by informant or accomplice testimony would not seem to be excessive. And the benefit, in terms both of fair trials and eliminating appeals, would seem to be substantial. Were we to face this situation with any frequency, especially in less clear cases, we would most seriously consider adopting a more stringent, per se rule.

Affirmed.