UNITED STATES of America, Appellee,

v.

Kenneth Michael BROWN,
Defendant, Appellant.

No. 90–2179.

United States Court of Appeals,
First Circuit.

Heard April 1, 1991.

Decided July 24, 1991.

Douglas J. Miller, by appointment of the Court, with whom Hall, Morse, Anderson, Bauer & Miller, P.C., was on brief, Concord, N.H., for defendant, appellant.

Peter E. Papps, First Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., was on brief, Concord, N.H., for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

On the afternoon of February 21, 1990, defendant, Kenneth Michael Brown, and an accomplice, David Scott Butler, entered Mamos Market in Concord, New Hampshire, where they attempted to purchase cigarettes with two "raised" bills.[1] The store clerk did not notice any irregularity when she first accepted what she believed to be a twenty dollar bill from defendant. Upon tender of a second twenty dollar bill by Butler, however, she noticed that defendant's bill had a picture of George Washington on it. She returned both bills, defendant returned his cigarettes and change, and the two perpetrators departed without

further incident. The clerk then called the police.

Before the police arrived, Butler proceeded to the Bank of New Hampshire where he exchanged three torn twenty dollar bills for three new ones. The bills exchanged had their right sides torn off. The new bills were given to defendant.

Shortly thereafter, defendant and Butler were arrested and taken to the local county jail. During a search for contraband and weapons, a jail officer discovered two torn twenty dollar bills secreted in defendant's rectal cavity. The bills had their left sides torn off.

Defendant and Butler were originally charged with state law violations; however, state proceedings were dismissed against defendant as the result of a defective complaint. Defendant was then charged under federal law. Counts I and II alleged violations of 18 U.S.C. § 484 (connecting parts of different notes), and Count III alleged a violation of 18 U.S.C. § 472 (uttering and passing an altered note). Defendant was convicted by a jury on Counts II and III and was subsequently sentenced to time served plus a one year term of supervised release with the special condition that he participate in a substance abuse program.

Defendant moved for judgment of acquittal or, in the alternative, for new trial. Both were denied by the district court. Defendant now appeals. The following issues have been raised before this court: (a) failure by the district court to conduct voir dire on the subject of racial prejudice; (b) failure by the district court to give an accomplice instruction to the jury; (c) improper restriction by the district court of cross-examination on the issue of whether Butler struck a deal with the government and improper exclusion of certain court records offered to prove the same; (d) improper reference to a violent crime during the government's closing argument; and (e) insufficiency of the evidence. We do

---

**1.** The "raised" bills were created by attaching the corners of a genuine twenty dollar bill to a genuine one dollar bill.

not find any of defendant's arguments persuasive.

## VOIR DIRE

■ Defendant maintains that he was denied the opportunity of a fair trial because, during jury selection, the district court refused to conduct voir dire on the issue of racial prejudice.[2] Defendant contends that race was relevant in his case because he is a young black male whereas all of the government's witnesses and all of the jurors were white. Under such circumstances, we recognize that voir dire on the issue of race may be advisable.[3] *See Ristaino v. Ross*, 424 U.S. 589, 597 n. 9, 96 S.Ct. 1017, 1022 n. 9, 47 L.Ed.2d 258 (1976) ("the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant"). We do not, however, find that it is required in this particular case.

■ Federal Rule of Criminal Procedure 24(a) grants trial judges the authority to conduct voir dire. Because voir dire determinations "rely largely on ... immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire." *Rosales–López v. United States*, 451 U.S. 182, 189, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981). Generally, a trial judge need not pursue any specific line of questioning; any method is sufficient provided it is probative on the issue of impartiality. *Ristaino*, 424 U.S. at 598, 96 S.Ct. at 1022.

■ The possibility of racial prejudice, however, raises special concerns. The Supreme Court has determined that under certain limited circumstances special voir dire questioning is constitutionally mandated. *See Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973) (involving a black civil rights activist whose defense to a marijuana possession charge was that he had been framed by local white police); *Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) (involving sentencing of a black defendant who had been convicted of a capital offense). Ordinarily, however, voir dire need not include questions regarding racial prejudice. The mere fact that a defendant is black does not alone trigger the special questioning requirement found in *Ham* and *Turner*. "There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups." *Rosales–López*, 451 U.S. at 190, 101 S.Ct. at 1635. "Only when there are more substantial indications of the likelihood of racial or ethnic prejudice" is a trial court required to probe the issue of racial bias. *Id.*

We do not find any special circumstances surrounding defendant's case which indicate that racial prejudice was a motivating factor behind the jury's decision to convict. Race was not an issue "inextricably bound up with the conduct of [defendant's] trial" as it was in *Ham*. *Ristaino*, 424 U.S. at 597, 96 S.Ct. at 1021. Jury deliberations did not require any unique or highly subjective determinations as they did in *Turner*. *Turner*, 476 U.S. at 33, 106 S.Ct. at 1686. And interracial violence was not an issue. *See Ristaino*, 424 U.S. at 598 n. 10, 96 S.Ct. at 1022 n. 10 (noting that the Supreme Court did require, under its supervisory power, special voir dire questioning in *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), a case involving murder of a white police officer by a black defendant). In fact, the jury saw fit to acquit defendant on Count I of the three-count indictment.

Absent the need for specific questioning as to racial bias, we find that the voir dire conducted in this case was sufficient. On

---

**2.** Defendant had proposed the following questions to the district court:

　　1. Do you feel that you should give the statements of a white man any more consideration than the statements of a black man or woman?

　　2. Do you understand that every individual is entitled to a fair trial and the equal protection of the laws regardless of that individual's race, social background or economic status?

　　3. Is there anything about Mr. Brown, including his race, that would prevent or impair your considering his case fairly and impartially?

**3.** At oral argument, the government conceded this point.

the issue of impartiality, Judge Devine queried: "Do you know of any reason why you may be prejudiced for or against the Government or the defendant because of the nature of the charges or otherwise?" Transcript at 1–12. No further questioning was required, although we reiterate that giving the defendant's requested instruction would have been more prudent.

## ACCOMPLICE INSTRUCTION

■ Defendant's cohort, David Butler, was the government's chief witness and the only witness who claimed that both "raised" bills were defendant's and that defendant knew they were altered at the time of the offense. Butler also claimed that the three genuine but torn bills he exchanged at the bank were defendant's.

"The usual test for determining if a witness is an accomplice for the [purpose of a cautionary instruction] is whether he is concerned in the commission of the specific crime with which the Defendant is charged ... or could be indicted or convicted of the identical offense for which the Defendant is being prosecuted." *United States v. Fortes*, 619 F.2d 108, 124 n. 7 (1st Cir.1980) (quoting *United States v. DeCicco*, 424 F.2d 531, 532 (5th Cir.1970)). Both Butler and defendant had been arrested for the same crime and charged with identical offenses in the state court. As a result, defendant correctly characterizes Butler as an accomplice whose testimony "ought to [have been] received with suspicion, and with the very greatest care and caution, and ought not to [have been] passed upon by the jury under the same rules governing other and apparently credible witnesses." *Crawford v. United States*, 212 U.S. 183, 204, 29 S.Ct. 260, 268, 53 L.Ed. 465 (1909).

The district court admonished the jury in the following manner regarding Butler's testimony:

> You have heard ... the testimony of ... David Scott Butler.... The Government is sometimes required to rely on the testimony of those who consort with parties accused of crime, and witnesses who testified under such circumstances are not incompetent as witnesses, but their testimony may be received into evidence, considered by the jury, and given just such weight that the jury feels that the testimony should receive. The testimony of any witness may be discredited or impeached by showing that the witness previously made statements which are inconsistent with the trial testimony of the witness. If a witness is shown to have testified falsely concerning any material matter, the jury has a right to distrust the testimony. It is for the jury to give the testimony of any witness just such weight and credibility as that testimony deserves.

Record at 2–46. The court refused, however, over defendant's objection, to include the phrase "with caution and great care" generally embodied in standard accomplice instructions. Defendant claims the omission constituted error.

This court has repeatedly held that a cautionary instruction is advisable when the government presents the testimony of an accomplice,[4] but the absence thereof is not ground for automatic reversal. *United States v. Olmstead*, 832 F.2d 642, 647 (1st Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1739, 100 L.Ed.2d 202 (1988); *see also United States v. Wright*, 573 F.2d 681, 685 (1st Cir.1977), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978); *United States v. House*, 471 F.2d 886, 888 (1st Cir.1973). This is especially true when the testimony in question is generally consistent and credible and is substantiated by abundant tangible evidence. *Wright*, 573 F.2d at 685; *United States v. Skandier*, 758 F.2d 43, 46 (1st Cir.1985); *House*, 471 F.2d at 889. Such was the case at hand. Butler's testimony was short, concise and free of internal inconsistencies. The story he told did not appear to be incredible. Moreover, it was corroborated by tangible evidence. Defendant was the first of the

---

4. The Supreme Court is likewise of the opinion that it is "the better practice for courts to caution juries against too much reliance upon the testimony of accomplices." *Holmgren v. United States*, 217 U.S. 509, 524–25, 30 S.Ct. 588, 592, 54 L.Ed. 861 (1910).

two accomplices to attempt to pass an altered bill at Mamos Market. In addition, after his arrest, defendant was found with two torn twenty dollar bills secreted in his rectal cavity. Any error which might have occurred as a result of the district court's refusal to administer the standard accomplice instruction was therefore rendered harmless. *See, e.g., Olmstead,* 832 F.2d at 647.

## CROSS–EXAMINATION/EXCLUSION OF EVIDENCE

Throughout the trial, defendant sought to portray Butler as a biased witness by demonstrating that Butler was receiving preferential treatment from the government. At the time of the Mamos Market incident, Butler had just been released on probation after having served 120 days for prior unrelated criminal activity. When defense counsel learned that Butler's probation and release had not been affected by his actions at Mamos Market (in addition to the fact that he had not been charged federally for those actions) counsel asked whether Butler attributed such treatment to the fact that he was testifying for the government against defendant. Butler responded in the negative. Defense counsel then tendered the following question, which was not allowed by the district court: "It didn't hurt any, did it, in your opinion?" Record 1–76.

Arresting officer Smith was thereafter called to the stand and questioned regarding whether Butler had been informed of the possibility of federal felony charges and the potentially greater sentence attached thereto. Smith responded in the affirmative;[5] however, Smith denied that any deal had been struck between the government and Butler. Defense counsel then queried: "It became clear to—in any event to Mr. Butler at that time that if he was charged federally, he would be facing far more time than if he was faced with a misdemeanor in state court; correct?"

Record at 1–84. The district court did not allow the question.

The day after Butler testified at defendant's trial, state court proceedings against him were dropped. Defendant offered into evidence certified court records establishing that fact. By the admission of said records, defendant sought to show that despite denials by both Butler and Smith of any deal between Butler and the government, Butler had in fact received a "reward" for his testimony. The district court rejected the evidence as speculative and irrelevant.

Defendant maintains that the district court committed material error on all three occasions. While we agree that exposure of bias is "always relevant as discrediting the witness and affecting the weight of his testimony," *Delaware v. Van Arsdall,* 475 U.S. 673, 677, 106 S.Ct. 1431, 1434, 89 L.Ed.2d 674 (1986) (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)), we do not agree that the restrictions imposed by the district court were prejudicial. We address each of defendant's contentions in turn.

*Cross–Examination*

■ The district court "is given wide discretion in controlling the scope of cross-examination." *United States v. Keithan,* 751 F.2d 9, 11 (1st Cir.1984). Reasonable limits may be placed on the method and extent thereof. *See Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435. Moreover, even when there has been an improper denial of cross-examination, reversal is only appropriate "if the denial appears to have been harmful." *United States v. Brown,* 603 F.2d 1022, 1026 (1st Cir.1979) (quoting *United States v. Honneus,* 508 F.2d 566, 572 (1st Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975)); *see also Crane v. Kentucky,* 476 U.S. 683, 691, 106 S.Ct. 2142, 2147, 90 L.Ed.2d 636 (1986) (erroneous trial court rulings on evidentiary matters are subject to harmless error analysis); *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436 ("the Constitution

---

**5.** When asked the same question earlier, Butler had denied having been instructed on the possibility of federal felony charges.

entitles a criminal defendant to a fair trial, not a perfect one").

The question posed to Butler was not improper. *See United States v. Towne*, 870 F.2d 880, 886 (2d Cir.), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989) (the mere hope of some future benefit may evidence bias). Nevertheless, when it became evident that Butler remained resolute in his denial of any deal with the government, curtailment of defense counsel's continued questioning on the matter fell within the district court's discretion. *See United States v. Brown*, 603 F.2d 1022, 1027 (1st Cir.1979). Even assuming that the district court erroneously restricted cross-examination, the error was rendered harmless because defendant's theory regarding a deal between Butler and the government was manifested to the jury through the testimony which was allowed. *See United States v. Fortes*, 619 F.2d 108, 118 (1st Cir.1980) ("The court need not permit unending excursions into each and every matter touching upon veracity if a reasonably complete picture has already been developed."). The defense, therefore, cannot show the necessary prejudice. *See Keithan*, 751 F.2d at 11.

■ Smith, on the other hand, was not an appropriate witness for the question asked. Testimony regarding the inchoate state of mind of a defendant does not fall within the category of allowable opinion testimony by lay witnesses. *See* Fed.R. Evid. 701 (the witness' opinion must be based on something the witness has actually perceived). Thus the district court correctly disallowed that particular line of questioning.

### Exclusion of Evidence

■ Admissibility of evidence falls within the sound discretion of the district court. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir.1987). That discretion is not unfettered, however. In this particular case, we do not accept the district court's characterization of the court records as irrelevant. They clearly went to the issue of bias and tended "to make the existence of [that] fact ... more probable ... than it

would [have] been without" it. Fed.R. Evid. 401. Nevertheless, we do not find that the exclusion of the evidence constituted reversible error.

■ For the following reasons, we "can say 'with fair assurance ... that the judgment was not substantially swayed by the error.'" *Lataille v. Ponte*, 754 F.2d 33, 37 (1st Cir.1985) (quoting *United States v. Pisari*, 636 F.2d 855, 859 (1st Cir.1981) (quoting *Kotteakos v. United States*, 328 U.S. 750, 756, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946))). First, the jury was well apprised of defendant's theory regarding a deal between Butler and the government. *See* Record at 1–75 and 1–84. Second, although Butler's testimony was important to the government's case, it was not crucial. The tangible evidence sufficiently bespoke guilt for defendant to have been convicted on it alone. *See infra* pp. 1489–90. The error was therefore harmless. *Lataille*, 754 F.2d at 37.

### CLOSING ARGUMENT

■ At trial, defendant maintained his innocence based in part on the fact that, when approached by the police, he surrendered several of the twenty dollar bills in his possession and was polite. During closing argument, in an attempt to portray that defense as absurd, the prosecutor likened it to a child who is found with his hands in the cookie jar. In addition, he related the following:

> That's the reaction that you would expect in these circumstances. Reminds you of the tale of the man sharpening his knife on the street corner and the policeman says: What happened here? And he says: Well, I was sharpening my knife and this man came around the corner and ran into me twelve times.

Record at 2–34. Such commentary was allowed by the district court over defendant's objection. On appeal, defendant maintains that a new trial is warranted because this "tale" improperly raised the issue of violence with respect to a non-violent crime, thereby inflaming the jury and robbing him of a fair trial.

The government accepts that the prosecutor's comments were not appropriate in this particular case. A new trial is not necessary, however. This court has stated, and the Supreme Court has affirmed, that the harmless error rule applies to prosecutorial misconduct during closing argument. *See United States v. Hasting,* 461 U.S. 499, 506, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983); *United States v. Maccini,* 721 F.2d 840, 846 (1st Cir.1983). "In deciding whether a new trial is required—either because prosecutorial misconduct likely affected a trial's outcome or to deter such misconduct in the future—we consider 'the severity of the misconduct, whether it was deliberate or accidental, the likely effect of the curative instruction, and the strength of the evidence against appellant[ ].'" *United States v. Cox,* 752 F.2d 741, 745 (1st Cir.1985) (quoting *United States v. Capone,* 683 F.2d 582, 586 (1st Cir.1982)).

We begin by noting that the severity of the misconduct in this case does not rise to the level of misconduct in previous cases in which the error was found to be harmless. *See United States v. Doe,* 860 F.2d 488, 492 (1st Cir.1988) (prosecutor improperly referred to defendants as "four innocent bastards"), *cert. denied sub nom. Crespo–Herrera v. United States,* 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989), and *cert. denied sub nom. Andrades–Salinas v. United States,* 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989); *Cox,* 752 F.2d at 745 (prosecutor improperly referred to defendants' failure to testify); *United States v. Farnkoff,* 535 F.2d 661, 668 (1st Cir.1976) (prosecutor improperly stated his own opinion concerning defendant's guilt). We next recognize that violence was not "a continuing theme upon which the prosecutor played," *Capone,* 683 F.2d at 586; rather, the improper commentary was an isolated incident seemingly without malicious intent. Moreover, the jury received the following instruction: "The opening statements and the closing arguments which have here been made by the attorney for the Government and the attorney for the defendant are not evidence." Record at 2–43. That the jury saw fit to acquit on Count 1 indicates it heeded this instruction

and was indeed "able to separate the wheat of the government's case from the chaff of the prosecutor's closing arguments." *Doe,* 860 F.2d at 495. Finally, the hard evidence against defendant was compelling. *See infra* pp. 1489–90. Clearly a new trial is not justified.

## SUFFICIENCY OF THE EVIDENCE

■ Defendant maintains that the evidence introduced at trial was insufficient to prove either that he knew the bill passed at Mamos Market had been altered or that he was the individual responsible for its alteration. He argues that it is just as likely the bill was obtained from Butler or from some independent third party. The facts of the case, however, do not support defendant's argument.

We must affirm defendant's conviction "unless the evidence, viewed in the light most favorable to the government, could not have persuaded any rational trier of fact of the defendant's guilt beyond a reasonable doubt." *United States v. Gibson,* 726 F.2d 869, 872 (1st Cir.), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984). "[T]he evidence need not preclude every reasonable hypothesis inconsistent with guilt.... It is enough that ... a rational jury could look objectively at the proof and supportably conclude beyond reasonable doubt that the defendant's guilt ha[s] been established." *United States v. Ingraham,* 832 F.2d 229, 239–40 (1st Cir. 1987) (citations omitted), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988).

Even discounting Butler's controverted testimony, the proof against defendant was ample. The hard evidence showed that defendant attempted to pass one of the "raised" notes at Mamos Market and that, after his arrest, he concealed two torn twenty dollar bills in a highly incriminating manner. From this evidence alone a reasonable jury could easily have concluded that the torn twenties were used to create the "raised" bill and therefore that defendant was aware the bill was altered when he attempted to pass it. *See United States v. Santiago,* 828 F.2d 866, 870 (1st Cir.

1987), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988) (it is the role of the jury, having seen and heard the witnesses, "to determine which of the various proffered interpretations of the evidence is credible"). Butler's testimony merely strengthened the case against defendant.

## CONCLUSION

For the reasons stated herein, the conviction of Kenneth Michael Brown and the district court order denying his motion for acquittal, or in the alternative new trial, are *affirmed.*