UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert E. COOK, Defendant–Appellant.

No. 96–1814.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1996.

Decided Dec. 5, 1996.

Mel S. Johnson (argued) and Mario Gonzales, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

John A. Ward, Kenosha, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

While employed by Wisconsin Armored Transport, Robert Cook hijacked an armored car containing some $260,000 bound for a federally-insured bank. He parked some of

the proceeds in a Cayman Islands bank under an assumed name for use in raising a private army to wage war on abortion clinics. Cook attempted to hire Joseph Martino to serve in the campaign, which as Cook recounted into Martino's tape recorder (he was in the pay of the FBI) would include a raid on a National Guard Armory to obtain military weapons, to be used to slaughter workers and patients at the clinics. By the time he was arrested, Cook had amassed an arsenal including two AR–15 assault rifles, four handguns, four crossbows, and plenty of ammunition. Martino was the star witness against Cook at trial, which ended in three convictions (bank larceny, money laundering, and solicitation to commit murder) and a sentence of 176 months' imprisonment.

■ Cook's objection to the sentence does not occasion much discussion. The guideline for solicitation of murder, U.S.S.G. 2A1.5, sets a base offense level of 28, plus 4 if something of value was offered for the deed. The district judge departed from level 32 to level 34 on account of Cook's weapons cache. Other provisions of the Sentencing Guidelines provide a two-level increase for weapons possessed in connection with the crime, e.g., § 2B5.1(b)(3), § 2D1.1(b)(1), and omission of such a provision from § 2A1.5 does not reflect a decision by the Sentencing Commission that adjustments are inappropriate. Possession of weapons that can be used to commit the murders was not considered, one way or the other, by the Commission, so a departure on this basis is permissible. *Koon v. United States,* — U.S. —, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); U.S.S.G. 5K2.6. Two levels is a modest adjustment— what the Guidelines specify for a single pistol, while Cook had more, and more deadly, weapons. He was substantially more dangerous than the usual person who sets out to hire someone else to commit a murder: he had both a ready cash reserve and a hoard of guns for use in a lethal campaign. The crime that produced the cash did not contribute to the length of the sentence, and this too could have been a basis of departure. Bank larceny and solicitation to commit murder were placed in separate groups under U.S.S.G. 3D1.2. Because the offense level of the solicitation offense was more than nine levels greater than that of the larceny, the larceny dropped out of the calculation. U.S.S.G. 3D1.4(c). As the Background Note to this section observes, the crime thus disregarded may be so serious that departure is justified to reflect its gravity. So the district court could have added additional levels for the theft. Cook should count himself fortunate; a higher sentence could have been imposed within the Guidelines' framework.

■ Cook's more substantial argument concerns the instructions to the jury. Martino received a total of $3,500 for his role in the investigation. After Cook tried to recruit Martino, the FBI asked him to record future negotiations and paid $500 for this service. When Cook later concluded that Martino was aiding the FBI and threatened violent retaliation, agents told him to get out of town quickly and gave him $3,000 for expenses during six weeks' absence. These payments were brought out at trial, and Cook asked the judge to instruct the jury that Martino's testimony must be "weighed . . . with greater care than the testimony of a witness who is not so motivated." This is the full instruction he proposed:

> The testimony of an informant, someone who provides evidence against someone else for money, or to escape punishment for his own misdeeds or crimes, or for other personal reason or advantage, must be examined and weighed by the jury with greater care than the testimony of a witness who is not so motivated.

> Joseph Martino may be considered to be an informant in this case.

> The jury must determine whether the informer's testimony has been affected by self-interest, or by the agreement he has with the government, or by his own interest in the outcome of this case, or by prejudice against the defendant.

The district judge declined to give this instruction for two reasons. First, the judge stated, an informant instruction is appropriate only when the witness has "a need or an interest in escaping punishment for his own misdeeds or crimes." Martino did not rat on Cook for a combination of money and lenience; instead he was a volunteer compen-

sated for lost employment opportunities and expenses necessitated by Cook's dangerousness. Second, the judge concluded, the general credibility instruction offered Cook's lawyer ample scope to argue that Martino's testimony should be discounted. Here is the instruction the court gave, derived from 1 *Federal Criminal Jury Instructions of the Seventh Circuit* § 1.02 (1980):

> You are the sole judges of the credibility of the witnesses, and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her intelligence, his or her ability and opportunity to observe, his or her age, his or her memory, his or her manner while testifying, any interests, bias, prejudice he or she may have and the reasonableness of his or her testimony considered in light of all the evidence in the case.

The prosecutor urges us to affirm for both of the district court's reasons.

We have substantial doubt about the first. Although Cook's proposed instruction, based on Edward J. Devitt, Charles B. Blackmar, Michael A. Wolff & Kevin F. O'Malley, 1 *Federal Jury Practice & Instructions* § 15.02 (1992), mentions a motive of escaping punishment, this is the result of combining topics usually handled separately. This circuit's pattern jury instruction 3.20 (1 *Federal Criminal Jury Instructions of the Seventh Circuit*) zeroes in on informers:

> You have heard testimony that _____ has received benefits from the government in connection with this case.
>
> You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

Instruction 25 in *Pattern Criminal Jury Instructions* (Federal Judicial Center 1987) is similar in scope but concentrates the jury's attention on the reason for being skeptical:

> You have heard the testimony of _____. He has an arrangement with the government under which he gets paid for providing information about criminal activity. The government may present the testimony of such a person. Some people who get paid for providing information about criminal activity are entirely truthful when testifying. Still, you should consider the testimony of _____ with more caution than the testimony of other witnesses. Since he may believe that he will continue to be paid only if he produces evidence of criminal conduct, he may have reason to make up stories or to exaggerate what others did. In deciding whether you believe _____'s testimony, you should keep these comments in mind.

What Instruction 3.20, Instruction 25, and the Devitt & Blackmar instruction have in common—and what differentiates them from the general credibility instruction the court gave—is the idea that testimony from witnesses who have been paid for assistance should be received with greater skepticism ("greater care" or "caution and great care" or "more caution") than the testimony of other witnesses. *Cum grano salis* follows from payment, and not solely from the prospect of a reduction in exposure to criminal punishment, as the district judge believed. Lower punishment is one coin in which witnesses may be paid, but not the only coin.

The argument for giving an informant instruction appears in the text of the Federal Judicial Center's version: an informant may invent or exaggerate matters to obtain extra compensation. Greed may affect not only reports of crime but also reports of threats afterward. Perhaps Martino wanted a paid vacation and attributed threats to Cook in order to get a bankroll. But the argument against giving such an instruction is equally straightforward: the informant's motive can be spelled out by counsel (if it is not admitted on cross-examination) and considered under the general credibility instruction. Jury instructions should be as short as possible in order to focus jurors' attention on what really matters. Repetition of things jurors already know may lead them to nod while the judge says something important, or to assume that the instructions contain nothing but bromides. An instruction that does not convey valuable information should not be given. Both Seventh Circuit Instruction 3.20 and Federal Judicial Center Instruction 25

are preferable to the Devitt & Blackmar instruction—Instruction 3.20 because it is shorter, and Instruction 25 because it asks the jury to consider the reason why an informant may lie. But should either instruction be given?

A special instruction about informants implies that their testimony remains less reliable than that of other witnesses even after all arguments pro and con about bias have been considered. Yet why should that be so? Many witnesses in criminal cases are unreliable—they are the defendant's confederates in crime, or live in the shadows of the law. Many are convicted felons who have demonstrated unwillingness to abide by the law, including the law against perjury. Even victim eyewitnesses may give unreliable testimony, because of the shortcomings of memory, the difficulty of categorizing facial features of other ethnic groups, and the tricks the mind plays on people desperate to pin the blame on someone. See Elizabeth F. Loftus, *Eyewitness Testimony: Psychological Research and Legal Thought*, 3 Crime and Justice: An Annual Review of Research 105 (1981); Sheri Lynn Johnson, *Cross-Racial Identification Errors in Criminal Cases*, 69 Cornell L.Rev. 934 (1984) (collecting empirical studies); Stephanie J. Platz & Harmon M. Hoch, *Cross-Racial/Ethnic Eyewitness Identification: A Field Study*, 18 J. Applied Social Psychology 972 (1988). *All* testimony poses risks; these differ in source and gravity, and it is difficult to generalize about which kinds of testimony are least reliable. Perhaps the defendant's own testimony goes in that box; courts used to think it so apt to be self-serving that they did not allow the accused to testify at all. See *Ferguson v. Georgia*, 365 U.S. 570, 573–82, 81 S.Ct. 756, 758–63, 5 L.Ed.2d 783 (1961) (recounting the history); *Rock v. Arkansas*, 483 U.S. 44, 49–50, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987). Sentencing enhancements for defendants' perjury are tellingly frequent. Some courts give special cautionary instructions about defendants' testimony—the FJC includes one, see No. 40 of its pattern instructions, but this circuit's pattern book does not, in large part because it would state the obvious.

Informants are tempted to manufacture or exaggerate evidence of crime, but law enforcement agents, aware of this, try to control them. An informant hired to buy drugs from a suspect will be searched before and after the transaction (to ensure that he has not brought his own drugs or kept the "buy" money). An informant hired to negotiate a criminal transaction often will be wired for sound, as Martino was, and his accounts of unrecorded conversations will be checked against those that were taped. A turncoat (that is, the defendant's former associate-in-crime who turns state's evidence) is not monitored in this way and therefore has greater leeway for invention at trial. The turncoat's reward structure also differs. Like defendants, turncoats see performance on the stand as the key to less time in prison. Compensation contingent on testimony favoring the prosecutor may create pressure to lie that a paid informant such as Martino does not face—for he had been paid in full before trial and did not expect to gain anything by testimony. (He was not a career snitch and did not anticipate a return engagement.)

■ All of this leads us to conclude that an instruction singling out paid informants' testimony as especially untrustworthy need not and should not be given as a matter of course. Such an instruction may be appropriate when a particular informant appears to present unusually great risks, which the judge fears the jury might underestimate unless the subject is drawn to its attention. This in turn implies that the decision either to give or to refrain from giving an instruction on the subject is committed to the discretion of the district court, which is best situated to detect and deal with threats of unreliable testimony, and that appellate review is deferential. The extent to which the informant's testimony is corroborated is just one of many things a judge sensibly may consider; lack of corroboration may make an instruction more appropriate but does not compel it, when an opportunity for cross-examination has put this point before the jury already. For several decades we have treated the subject in this way, accepting the district judge's resolution. *United States v. Rajewski*, 526 F.2d 149, 159–60 (7th Cir. 1975); *United States v. Booker*, 480 F.2d

1310, 1311 (7th Cir.1973); *United States v. Green,* 327 F.2d 715, 718 (7th Cir.1964). See also *United States ex rel. Swimley v. Nesbitt,* 608 F.2d 1130 (7th Cir.1979) (same conclusion under the due process clause of the fourteenth amendment). Cf. *United States v. Yarbough,* 55 F.3d 280, 283–85 (7th Cir.1995).

As far as we can make out, this court has never reversed a criminal conviction for failure to give an instruction stating that informants' testimony should be given special scrutiny. Cook relies particularly on decisions of the ninth circuit holding that the giving of an informant instruction is compulsory. *United States v. Bosch,* 914 F.2d 1239, 1247 (9th Cir.1990); *United States v. Bernard,* 625 F.2d 854, 857–59 (9th Cir.1980); *United States v. Martin,* 489 F.2d 674, 677 n. 2 (9th Cir.1973). Other courts of appeals, while not reversing convictions, have urged district judges to give informant instructions. See *United States v. Bermea,* 30 F.3d 1539, 1552 (5th Cir.1994); *United States v. Brooks,* 928 F.2d 1403 (4th Cir.1991). Given the pervasiveness of reliability problems, we think it adequate, in the main, to give a general credibility instruction referring to the possibility of bias, which coupled with cross-examination and closing argument by counsel will put the subject before the jury for decision.

Nothing the Supreme Court has said makes a special informant instruction obligatory. Only two of its cases bear on the subject. *On Lee v. United States,* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), is the first. After rejecting defendant's argument that all evidence obtained via informants should be excluded, the Court observed:

The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are "dirty business" may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions.

343 U.S. at 757, 72 S.Ct. at 973–74. What might "careful instructions" consist in? The Court did not say, because the informant had not testified. A federal agent testified to the conversations the informant's microphone picked up and transmitted; the informant's probity was not at issue. In *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the second case, the informant took the stand. The Court allowed that the informant "perhaps even more than most informers, may have had motives to lie." *Id.* at 311, 87 S.Ct. at 418. But it did not think this any reason to depart from "[t]he established safeguards of the Anglo–American legal system [that] leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Ibid.* The instructions bearing on this subject in *Hoffa,* which the Court thought adequate, did not single out informants for attention— although the district judge gave an instruction summarizing Hoffa's main arguments, one of which was that the informant has ingratiated himself with Hoffa "in order to serve his own purposes and interests." *Id.* at 312 n. 13, 87 S.Ct. at 418 n. 13. Then the Court gave this comprehensive credibility instruction:

You should carefully scrutinize the testimony given and the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief. Consider each witness' intelligence, his motives, state of mind, his demeanor and manner while on the witness stand. Consider also any relation each witness may bear to either side of the case.... All evidence of a witness whose self-interest is shown from either benefits received, detriments suffered, threats or promises made, or any attitude of the witness which might tend to prompt testimony either favorable or unfavorable to the accused should be considered with caution and weighed with care.

385 U.S. at 312 n. 14, 87 S.Ct. at 418 n. 14. Unlike the instruction Cook requested, the instruction given in *Hoffa* is inclusive: it neither singles out paid informants for skepticism nor suggests that dubiety should be reserved for the prosecution's witnesses. The credibility instruction given in Cook's case has these virtues and is shorter to boot. When elaboration on circuit pattern Instruc-

tion 1.02 is in order, the FJC's Instruction 25 and the *Hoffa* instruction are better models than the Devitt & Blackmar instruction.

Cook's attorney had every opportunity to cross-examine Martino and argue his position under the general credibility instruction. Counsel did not ask for an elaboration of that instruction along the lines of the *Hoffa* instruction or the FJC's Instruction 25. The district judge did not abuse his discretion in concluding that Martino's testimony was not so suspect, or the jury's task so difficult, that an instruction singling out informants was essential.

AFFIRMED.

RIPPLE, Circuit Judge, concurring.

I agree that the judgment ought to be affirmed and join the judgment and the opinion of the court. As the opinion states, "the decision either to give or to refrain from giving an instruction on the subject [of testimony by an informant] is committed to the discretion of the district court, which is best situated to detect and deal with threats of unreliable testimony, and that appellate review is deferential." I write separately because I fear that the majority opinion may be read as sending far too strong a message to the district courts of this circuit that their discretion is more cabined than it has been in the past or as signaling a radical departure from the practice of the past, the precedent of this circuit or, indeed, from the practice throughout most of the United States.

The law of this circuit with respect to this instruction is well established and consistent. The decision whether to give an instruction cautioning the jury with respect to the special difficulties posed by the testimony of an informant is committed to sound discretion of the trial judge. No one else is in a comparable position to make the prudential judgment as to whether such an instruction is appropriate. It is for that reason that our opinions have avoided, consistently, establishing any categorical limitations on the discretion. *See, e.g., United States v. Rajewski*, 526 F.2d 149, 160 (7th Cir.1975), *cert. denied*, 426 U.S. 908,

96 S.Ct. 2231, 48 L.Ed.2d 833 (1976); *United States v. Booker*, 480 F.2d 1310, 1311 (7th Cir.1973) (Stevens, J.) (stating that, although the refusal to give an informer instruction was not reversible error, in view of the informer's relationship with the prosecution and "fundamental requirements of fairness," the district court should have considered an instruction tailored to the circumstances of the case); *cf. United States v. Yarbough*, 55 F.3d 280, 283–84 (7th Cir.1995) (4–part test for addict-informant instruction); *United States v. Hoffman*, 957 F.2d 296, 299 (7th Cir.), *cert. denied*, 504 U.S. 960, 112 S.Ct. 2315, 119 L.Ed.2d 235 (1992) (same).[1]

In modern federal criminal practice, the informant defies easy stereotyping. As an undercover gatherer of evidence or information for the government, he may work for the government in a long-term capacity or in only one case. He may have a great deal at stake in terms of his own future in the criminal justice system or he may be free of any exposure in that regard. He may be motivated by money, by need for governmental protection or immunity for himself or family members, or by a permutation of these factors. When an informant is testifying for personal gain or advantage rather than for an independent law enforcement purpose, the jury well may need to be cautioned about the potential bias and unreliability of his self-interested testimony.

The Supreme Court, demonstrating the appropriate approach for any federal appellate court, has not been inclined to establish any categorical rules or to suggest any particular characterizations that require that a cautionary instruction be given. *See Cool v. United States*, 409 U.S. 100, 103, 93 S.Ct. 354, 356–57, 34 L.Ed.2d 335 (1972) (commenting that accomplice instructions have long been used and approved, that they represent a "commonsense recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity"). It has simply said that, in a given case, such testimony could pose a significant danger to the fairness of the trial and, when the

---

1. *U.S. ex rel. Swimley v. Nesbitt*, 608 F.2d 1130 (7th Cir.1979), although a habeas case, also has a

thoughtful discussion of cautionary instructions.

trial judge perceives such a danger, the jury ought to be cautioned. *See Hoffa v. United States,* 385 U.S. 293, 311–12, 87 S.Ct. 408, 418–19, 17 L.Ed.2d 374 (1966); *On Lee v. United States,* 343 U.S. 747, 757, 72 S.Ct. 967, 973–74, 96 L.Ed. 1270 (1952). In other circuits, the giving of an informant or accomplice instruction is largely within the discretion of the trial court. Most other circuits treat informant and accomplice instructions as generally advisable and prudent, particularly when the witness's testimony is materially uncorroborated; nevertheless, the failure to give the instructions is not automatic error. *See, e.g., United States v. Laing,* 889 F.2d 281, 287 (D.C.Cir.1989) (refusal to give instruction may be reversible error if accomplice testimony is uncorroborated), *cert. denied,* 494 U.S. 1069, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990); *United States v. Olmstead,* 832 F.2d 642, 646–48 (1st Cir.1987) (prudent to give instruction when the government predominantly relies on the informant or accomplice), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1739, 100 L.Ed.2d 202 (1988); *United States v. Gonzalez,* 491 F.2d 1202, 1207–08 (5th Cir.1974) (defendants are entitled to the instruction when it is requested and when the evidence implicating the defendant's guilt is elicited solely from the informer); *cf. United States v. Frost,* 914 F.2d 756, 766 (6th Cir.1990) (finding that trial court that thoroughly cautioned jury concerning witness credibility and the validity of accomplice testimony did not abuse its discretion in refusing to give a perjury instruction).

In *United States v. House,* 471 F.2d 886 (1st Cir.1973), Judge Coffin seems to have stated the consensus when commenting on the "error per se" approach of the Tenth Circuit.[2] He noted that the First Circuit "prefer[s] not to take this step but prefer[s] to call the attention of the district courts in

this circuit to the prudence of giving, whether requested or not, cautionary instructions where the government predominantly relies on informants or accomplices." *Id.* He also noted that the burden is not excessive, and the benefit is substantial, to include a cautionary instruction when a case is dominated by informant testimony. *Id.* at 889. Similarly, the Eighth Circuit has left the decision to instruct to the trial court; it has held "that no absolute and mandatory duty is imposed upon the trial court to advise the jury by instruction that they should consider the testimony of an uncorroborated accomplice with caution." *United States v. McMasters,* 90 F.3d 1394, 1402–03 (8th Cir.1996) (citation omitted).

Against this background, I think it would be a serious mistake for the district judges of this circuit to read the court's opinion today as establishing particular categories of informants whose testimony warrants the instruction and other categories of informants whose testimony does not warrant such a caution. Similarly, I think that the precise text of the instruction, when the trial judge believes that the fairness of the proceedings requires one, ought to be committed to the trial court's discretion. There no doubt will be cases when a general cautionary instruction about the responsibility of the juror to examine the motivation of witnesses will suffice. In other cases, a more specific instruction pointing out, as the Supreme Court has acknowledged in *On Lee,* the special difficulties in assessing informant testimony will no doubt be indicated. Categorical imperatives established by appellate judges in advance and imposed on trial judges are entirely inappropriate in such a situation.

The case before us was a close call. The informant presented a complex bundle of characteristics for the trial judge to sort out.

---

**2.** In the Tenth Circuit, when an accomplice's testimony is uncorroborated and a cautionary instruction is not given, it is error per se, even if the testimony is facially consistent. *Id.* at 888, citing *United States v. Owens,* 460 F.2d 268 (10th Cir.1972); see also *United States v. Miller,* 499 F.2d 736, 742 n. 3 (10th Cir.1974).

The Ninth Circuit's position is that an informant instruction must be given when the testimony of an informant or accomplice is substantially uncorroborated, *United States v. Bosch,* 914 F.2d 1239, 1247 (9th Cir.1990), and should be given to minimize unfairness, and that the failure to instruct is reversible error when the informant's testimony constituted the main or complete evidence against the defendant and thus it would be prejudicial not to caution the jury of potentially unreliable testimony. *People of Territory of Guam v. Dela Rosa,* 644 F.2d 1257, 1260 (9th Cir.1980); *United States v. Bernard,* 625 F.2d 854, 857–58 (9th Cir.1980).

Although not facing immediate criminal proceedings himself and not in the career employ of the government, the informant was receiving compensation from the government, had concerns for his own safety, and was in need of government assistance to maintain his anonymity. He apparently also had some interest, realistic or not, about a career in law enforcement, a consideration that might have altered his motivation. Given these circumstances, the trial judge was content to choose a general cautionary instruction on the credibility of witnesses. I cannot say that this determination was beyond the range of options from which one would expect a trial judge to select in such a situation. Accordingly, his decision ought not be disturbed.