108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Howard L. REYNOLDS, Defendant-Appellant.
 No. 96-2418.
 United States Court of Appeals, Seventh Circuit.
 Argued March 5, 1997.
Decided March 17, 1997.
 
 Before FLAUM, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Howard Reynolds was convicted after a jury trial of bank robbery in violation of 18 U.S.C. § 2113(a). On appeal, he asserts that the district court committed reversible error by failing to tender a jury instruction based on the Seventh Circuit Pattern Instruction 3.20 (Testimony of an Informer). Because the issue of the informer's credibility was fully placed before the jury for decision, we affirm.
 
 BACKGROUND
 
 2
 On November 3, 1993, Reynolds borrowed Marilyn Brinker's maroon-colored 1976 Chevrolet Malibu Classic. He drove it to the First Bank of O'Fallon in Shiloh, Illinois, which he entered and robbed of over $12,000. In an attempt to disguise himself, he wore purplish make-up and a stocking cap. A witness saw him drive the Malibu away, copied down the license plate number and informed the police. Reynolds was arrested later that day.
 
 
 3
 At trial, the Government called two tellers from the bank who positively identified Reynolds as the robber. Three witnesses testified to having seen the maroon Chevrolet near the bank, and the neighbor testified that Reynolds borrowed the car. One of the tellers testified that Reynolds wore purplish-reddish make-up. Angela Hines, with whom Reynolds was living at the time of the robbery, testified that he had on red make-up when he returned home that morning.
 
 
 4
 The Government also called Alphonso Travis, a federal prisoner, to testify about conversations that he had with Reynolds while housed in the same cell.[1] Travis was in prison serving a 106 month sentence on a conviction for possession of cocaine with the intent to distribute. Prior to the Reynolds trial, Travis had approached the United State's Attorney's Office hoping to exchange cooperation for the Government's agreement to file a Rule 35(b) motion.[2] On January 30, 1995, he signed a plea agreement in which he agreed to "give full, complete and truthful testimony or information and [to] do all things necessary to assist law enforcement personnel in their investigations into activities in which [he was] involved or of which he knows," (Plea Agreement at 1, p 2), in exchange for the Government informing the court of his voluntary cooperation. (Id. at 2, p 3).[3]
 
 
 5
 At trial, Travis testified that Reynolds made various incriminating statements to him about the bank robbery, essentially admitting that he was the perpetrator. Specifically, Travis testified that Reynolds showed him some photographs from the robbery and asked if Travis thought the person in the pictures looked like him. Travis said yes, and Reynolds swore. Reynolds also told Travis that his stepdaughter (apparently referring to Angela Hines) was the only one who had actually seen him wearing the make-up, but that she was in Canada and would not be available to testify. Travis also testified that Reynolds told him he committed the robbery alone, that he used a neighbor's car during the robbery, and that he tried to cover himself by purchasing beer and cigarettes with a hundred dollar bill that was not from the robbery. Finally, he testified that Reynolds told him he had gotten approximately $13,000 from the bank.
 
 
 6
 During cross examination, Travis was questioned about the plea agreement and about two prior convictions. He also testified that he and Reynolds were housed in a four-man cell, that the two other prisoners were Hispanic (only one of whom spoke English), that they had no means of securing their legal papers, and that occasionally he had been in the cell alone. Further, he stated that he had no co-defendants and, thus, was unable to fulfill the terms of his plea agreement by flipping. He admitted expecting to get some reduction in his sentence in exchange for testifying, but stated that he had no idea how much to expect. He also admitted that he would lie to avoid going to jail, but stated that he would not lie to reduce the amount of time he would stay in jail.
 
 
 7
 At closing, defense counsel rigorously attacked Travis' credibility. First, he argued that Travis was a liar. Counsel argued that Travis' statement that he would not lie to minimize his time in jail was ludicrous. He supported this argument by implying that the plea agreement gave Travis every incentive to lie. He also argued that Travis had access to all of Reynolds' trial documents, and that is how Travis knew the facts that he testified about.
 
 
 8
 Reynolds called three witnesses, also prisoners housed with Reynolds at various times, who testified that it was not Reynolds' habit to discuss his case. Each of the witnesses met Reynolds at the St. Clair County Jail, where he was transferred after being housed at Fayette. At closing, counsel argued that their description of Reynolds (i.e. distrusting and mute) was simply more logical than Travis', given their circumstances. Reynolds also called an expert witness who testified that Reynolds was not the man shown in photographs taken by the bank of the robber.
 
 
 9
 Finally, evidence was presented that Reynolds was on a home monitoring device. When Reynolds went more than 50 feet from his home, a computer registered the time. Similarly, the computer registered when Reynolds returned. On November 3, 1993, the computer registered Reynolds as being out of range from 8:56 AM to 9:36 AM. However, there was evidence that the bank alarm registered at 9:31 AM, and that it took four minutes and two seconds to drive from the bank to Reynolds' home at the speed limit (it took three minutes and 25 seconds driving between five and ten miles over the speed limit). At closing, Reynolds' attorney argued that it was impossible for him to have robbed the bank and returned to his apartment by 9:36.
 
 
 10
 Travis submitted a special instruction on informer testimony based on the Seventh Circuit Pattern Instruction 3.20: "You have heard testimony that Alphonzo Travis has received benefits from the Government in connection with this case. You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care." The Government objected arguing that there was no evidence that Travis had already received any benefit. Reynolds asserted that the Government's promise constituted a benefit. The district court stated:
 
 
 11
 I don't believe our situation is contemplated by this rule. The way I understand [it,] this rule contemplates the witness having received a benefit, whether it was [a] reduced sentence or cash payments or dropping of a charge or the agreement not to prosecute. Any of those are actual benefits, but this is kind of preliminary[;] there[,] over the horizon. On gossamer wings[,] one could say.
 
 
 12
 (Trial Tr. at III-57.) After Reynolds' attorney stated that this was enough to get Travis into court, the Government's objection to the special instruction was sustained. Reynolds did not explicitly object, then or when the instructions were given. The district court gave a general credibility instruction.[4]
 
 
 13
 On appeal, Reynolds contends that the district court committed reversible error in refusing to give the special instruction regarding Travis' credibility.
 
 ANALYSIS
 
 14
 The Government asserts that Reynolds failed to preserve this objection because he did not explicitly object to the district court's ruling on the special instruction. The Government correctly argues that merely submitting jury instructions is insufficient. See United States v. Mounts, 35 F.3d 1208, 1221 (7th Cir.1994), cert. denied, 115 S.Ct. 1366 (1995); United States v. Douglas, 818 F.2d 1317, 1320 (7th Cir.1987). Rather, "a defendant must object, on the record, to the judge's refusal to tender the defendant's instructions, and must clearly state the reasons for his or her objection." Douglas, 818 F.2d at 1320, see also Fed.R.Crim.P. 30; Mounts, 35 F.3d at 1221.
 
 
 15
 However, Reynolds did more than merely submit his proposed instruction. At the jury instruction conference, Reynolds' attorney advocated strongly for the special instruction, repeatedly arguing that Travis had in fact received a benefit in exchange for his testimony; namely, the Government's promise to reopen his sentence for the drug conviction. (See Trial Tr. at III-55-57.) Where the district judge is apprised of the grounds for the objection a litigant is not required to adhere to "formalities of language and style." United States v. Martinez, 988 F.2d 685, 698 (7th Cir.1993). We believe the detailed discussion which ended with the rejection of the instruction in question was sufficient to preserve the objection under Rule 30. Therefore, we review the district court's decision for an abuse of discretion. United States v. Cook, 102 F.3d 249, 252 (7th Cir.1996) ("[T]he decision either to give or to refrain from giving an instruction on the subject [of informer credibility] is committed to the discretion of the district court, which is best suited to detect and deal with threats of unreliable testimony.").
 
 
 16
 The reason a special informer instruction may be called for is that "an informant may invent or exaggerate matters to obtain extra compensation." Id. at 251. As the Supreme Court noted: "The use of informers ... may raise serious questions of credibility." On Lee v. United States, 343 U.S. 747, 757 (1952). Therefore, "a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions." Id. But "it [is] adequate, in the main, to give a general credibility instruction referring to the possibility of bias, which coupled with cross-examination and closing argument by counsel will put the subject before the jury for decision." Cook, 102 F.3d at 253.
 
 
 17
 On appeal, Reynolds asserts that he was "extremely prejudiced" by the district court's failure to instruct the jury to treat Travis' testimony with great caution and care. He argues that Travis' testimony was pivotal to the Government's case because the identity of the perpetrator was highly disputed and because "a review of the time line ... rendered it impossible for the defendant to have committed the robbery." (Reynolds Br. at 15.) In essence, he argues that the issue of Travis' credibility was not adequately placed before the jury.
 
 
 18
 However, the issue of Travis' credibility was put to the jury. Reynolds' attorney conducted a rigorous cross-examination of Travis, eliciting testimony that he had access to all of Reynolds' legal papers, had the potential to benefit from his testimony, could not benefit by testifying against anyone in his own trial, had two prior convictions, and so on. Moreover, Reynolds called three fellow prisoners who testified that Reynolds never volunteered information about his case, thereby impeaching Travis' testimony that he did. Further, Reynolds' attorney had the opportunity (and used it) to attack Travis' credibility in his closing argument. Finally, the district court instructed the jury to consider each witness's "interest, bias or prejudice" when evaluating their credibility and determining the weight to give their testimony. There is no question that the issue of Travis' credibility was put before the jury for decision. Reynolds does not make any showing that the issue of Travis' credibility was especially difficult so as to require the special instruction.
 
 
 19
 In conclusion, because Reynolds had broad latitude to probe the credibility of Travis and argue the issue during closing argument, and because the district court properly instructed the jury to weigh the credibility of each witness for bias, interest and prejudice, the district court did not abuse its discretion when it refused to give Reynolds' proposed instruction.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Travis and Reynolds were housed together in a four-man cell at Fayette County Jail. It is unclear how long they were housed together. Travis testified "it was between March through May [of 1995], somewhere around in that area." (Trial Tr. at II-83.) Travis was transferred from Fayette to Perry County Jail at the end of May 1995. (Trial Tr. at II-89.)
 
 
 [2]
 Federal Rule of Criminal Procedure 35(b) provides that the Government may make a motion within one year of the imposition of sentence for a reduction in sentence to reflect subsequent, substantial assistance in the investigation or prosecution of another person. Travis had been sentenced prior to Reynold's trial
 
 
 [3]
 Travis' plea agreement provides:
 Defendant and the Government agree that based on complete and total cooperation on the part of Defendant, the Government may, in the sole discretion of the United States Attorney, file a Rule 35 motion at the appropriate time advising the Court of a recommended reduction of sentence. The amount of the recommended reduction rests in the sole discretion of the United States Attorney. This paragraph applies only if the assistance rendered by the Defendant is found to be complete and thoroughly truthful, regardless of the outcome of any trial or hearing at which the Defendant may testify. The Defendant understands that any reduction of sentence, and the extent of that reduction, lies in the discretion of the Court.
 (Plea Agreement at 10, p 9 (emphasis in original).)
 
 
 [4]
 The district court gave the following credibility instruction:
 You are the sole judges of the credibility of the witnesses, and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her intelligence, his or her ability and opportunity to observe, his or her age, his or her memory, his or her manner while testifying, any interest, bias or prejudice he or she may have, and the reasonableness of his or her testimony considered in the light of all the evidence in the case.
 (See Court's Instruction No. 2, Trial Tr. at IV-18.)