# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2805

BACKWATER, INCORPORATED, doing
business as FINKE'S, WILLIAM FINKE,
and RUTH FINKE,

*Plaintiffs-Appellants*,

*v.*

PENN-AMERICAN INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 04 C 52—**Paul R. Cherry**, *Magistrate Judge.*

ARGUED APRIL 5, 2006—DECIDED MAY 24, 2006

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* In late December 2001, a High-
land, Indiana, nightclub called "Finke's" was vandalized.
The damage was extensive, and the club's owners, William
and Ruth Finke (more precisely, their company, "Back-
water, Inc."), soon filed a claim with the property's insurer,
Penn-American Insurance Company. But Penn-American
rejected the claim, concluding after a lengthy investigation
that the vandalism was an inside job. The Finkes sued,
alleging breach of contract and bad faith. *See Erie Ins. Co.
v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993) (recognizing

cause of action for insurer's breach of implied obligation of good faith and fair dealing). After removing the case to federal court based on diversity of citizenship, Penn-American sought and obtained summary judgment on the bad-faith claim and later prevailed in a jury trial on the breach-of-contract claim. The Finkes appeal both outcomes.

Under Indiana law, an insurer breaches its obligation to deal fairly with an insured when it denies a claim knowing that there is no rational, principled basis for doing so. *See Hickman*, 622 N.E.2d at 520. Penn-American identifies a number of facts that, it argues, provided a rational basis for denying the Finkes' claim. For starters, fewer than 60 days before the vandalism, the Finkes increased the coverage on the building and its contents from $800,000 to $1,400,000. Then, after increasing the coverage, Mr. Finke made several inquires to his alarm company concerning its monitoring of the building's openings and closings. The vandalism itself was unusually thorough—the perpetrators carefully disabled the building's security system (which Mr. Finke himself had installed), preventing any of the 48 interior cameras from recording any activity and allowing the vandals to spend several hours trashing the place— even taking time to prepare a midnight snack in the club's kitchen. Finally, there was reason to think the Finkes might have been looking for a way out of the business—not only did the club's tax returns indicate that it was losing money, but its prospects were further dampened by a series of run-ins with the community concerning noise and parking.

According to the Finkes, none of this proves anything. So what if they increased their insurance coverage? They only did it, they say, after an insurance agent told them the property was underinsured. The other evidence on which Penn-American relied is likewise circumstantial, the Finkes assert, and equally open to innocent interpretation. Because such an interpretation is possible, they argue, summary judgment on their bad-faith claim was inappropriate.

The Finkes are right that the court, in deciding a motion for summary judgment, is obliged to construe the facts as favorably as possible to the nonmoving party. But Penn-American, in deciding whether to grant or deny coverage, was under no such obligation. Rather, it was free, within the constraints of reason and good faith, to evaluate the evidence and draw its own conclusion about the source of the vandalism. The Finkes acknowledge that "conflicting inferences may be drawn" from the facts. That's practically the definition of a good-faith dispute. And such a dispute, in the words of the Supreme Court of Indiana, "cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured." *Monroe Guar. Ins. Co. v. Magworks Corp.*, 829 N.E.2d 968, 976 (Ind. 2005). Summary judgment was appropriate on the bad-faith claim.

In deciding the Finkes' breach-of-contract claim, the jury was similarly free to evaluate the evidence, and apparently (as far as we can tell from the general verdict form) it agreed with Penn-American. Challenging that verdict, the Finkes identify two ways in which they believe the trial was flawed. First, they say the court improperly excluded evidence bearing on their reason for increasing their insurance coverage in November 2001. Mr. Finke was going to testify about the conversation in which the insurance agent told him the property was underinsured, but the court barred the testimony as hearsay since it was apparently offered as evidence of the truth of the matter asserted—that the property was underinsured. (The agent himself also testified but had trouble recalling the substance of the conversation.) According to the Finkes, the point of the testimony wasn't to show that the property actually needed more insurance, but rather to show the effect of the agent's assessment on the Finkes' own decision-making; therefore, they argue, it was not hearsay. *See United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002)

(out-of-court statement not hearsay when offered to show the effect it had on the listener).

It's not a bad argument, but unfortunately for the Finkes it's also not an argument they made during the trial: instead of responding to Penn-American's objection with an offer of proof or by asking that the testimony be admitted subject to a limiting instruction, they simply moved on, forfeiting any charge of error. They now try to get around that forfeiture by calling the exclusion "plain error"—that is, an error so obvious, crucial, and egregious that we may and should correct it even though no objection was made below. *See* Fed. R. Evid. 103(d); *Stringel v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 415, 421 (7th Cir. 1996). But that's an extraordinary measure, *see Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir. 2006) (noting "extremely limited" application of plain-error review in civil litigation), and we don't see anything extraordinary here.

The Finkes also say it was plain error for the court to include in the jury instructions the (undisputed) fact that "[o]n or about November 1, 2001, Backwater, Inc. increased the property insurance coverage on both the building and the contents." *See* Fed. R. Civ. P. 51(d)(2) (allowing plain-error review of jury instructions); *Higbee*, 440 F.3d at 409. Specifically, they are concerned about the fact's placement: right at the beginning of the background narrative. Putting the statement there, they argue, gave it an "unwarranted emphasis," focusing the jury's attention on a fact supporting Penn-American's theory that the Finkes trashed the club for the insurance money. Calling this error at all seems a stretch—in any arrangement of jury instructions, after all, "[s]omething has to come first, something last." *Texas & Pac. R.R. Co. v. Jones*, 298 F.2d 188, 191 (5th Cir. 1962). Calling it plain error, without citing a single case in which the order of instructions was held to be relevant, stretches that term beyond the breaking point.

The undisputed facts show that Penn-American had reason to suspect insurance fraud, so there was no bad faith. The jury agreed that coverage was properly denied, and the Finkes identify no plain error in the way the trial was conducted. The judgment is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*