In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 05-2596 & 05-2633

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CLAUDE WILEY, JR. and
TATU M. BROWN,

*Defendants-Appellants*.

_____

Appeals from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 04 CR 7—**John Daniel Tinder**, *Judge.*

_____

ARGUED NOVEMBER 6, 2006—DECIDED FEBRUARY 6, 2007

_____

Before RIPPLE, WILLIAMS and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Claude Wiley, Jr. and Tatu M. Brown were charged in a single indictment with various counts relating to a drug conspiracy. Mr. Brown subsequently entered a conditional guilty plea to a single count of conspiracy and the district court sentenced him to 188 months' imprisonment. Mr. Wiley proceeded to trial and was convicted of a conspiracy charge and of certain distribution charges. The district court sentenced him to 395 months' imprisonment.

Mr. Brown and Mr. Wiley timely filed these direct appeals. Mr. Brown contends that evidence obtained from a search of his home was inadmissible because the affidavit in support of the warrant did not establish probable cause. He further submits that the good faith exception to the warrant requirement is inapplicable. Mr. Wiley contends that the jury was instructed improperly as to the weight to give the testimony of Government informants who received a benefit in exchange for their testimony. For the reasons set forth in the following opinion, we affirm the convictions of both defendants.

# I

# BACKGROUND

Mr. Brown and Mr. Wiley were charged in a single, four-count superseding indictment with several offenses under 21 U.S.C. § 841(a)(1). Both defendants faced a charge of conspiracy to possess with intent to distribute and conspiracy to distribute cocaine hydrochloride ("powder cocaine") and cocaine base ("crack") as well as a charge of crack distribution. Mr. Wiley also was charged with distribution of powder cocaine. The indictment alleged that Mr. Wiley obtained powder cocaine in Chicago and that, by himself and with the assistance of others, he transported the cocaine to Terre Haute, Indiana, where he and Mr. Brown both distributed cocaine powder and also manufactured and distributed crack.

## A.  Facts and Proceedings Involving Mr. Brown

### 1. The Search Warrant

On January 16, 2003, Drug Enforcement Administration ("DEA") Special Agent Joanna Zoltay executed an eight-

page affidavit detailing evidence linking Mr. Brown to drug trafficking. This affidavit was intended to accompany an application for a search warrant for Mr. Brown's residence at 2320 2nd Avenue, Terre Haute, Indiana. In that affidavit, Agent Zoltay first recounted facts about a controlled buy of cocaine in which Mr. Brown was involved. Specifically, on September 24, 2002, a confidential source ("CS"), whose information previously had resulted in over ten convictions of narcotics traffickers, contacted the DEA and stated that the CS could purchase cocaine from a man named Donte Britt.[1] The DEA prepared the CS for a controlled buy from Britt later that same afternoon, including outfitting him with a listening device. The CS then traveled to a motel parking lot. Britt met the CS at the CS' vehicle, then walked to a green Ford Expedition parked across the street. The CS called out over the wire that he observed Mr. Brown in the Expedition. A license plate check revealed that the Expedition was registered to Annalee Monts, Mr. Brown's girlfriend, at the 2nd Avenue residence. Britt returned to the CS' vehicle from the Expedition carrying 28.9 grams of cocaine which the CS purchased and handed over to the police. Agent Zoltay further stated that it was consistent with her experience in narcotics investigations that "upper level narcotics traffickers do not participate in transactions with persons they do not know, but will deliver to a middleman such as Brit[t], who then conducts the transaction." R.59, Ex.C at 2.

Agent Zoltay also recounted statements of two additional sources who had identified Mr. Brown as a drug trafficker.

---

[1] The affidavit refers to him as "Brit," although the remainder of the record makes clear that his name is in fact "Britt."

First, a cooperating individual ("CI-1"), arrested on crack distribution charges, had informed the police that he had trafficked cocaine for a period of several years and that Mr. Brown was his primary drug source during that period. He also stated that Mr. Brown supplied other distributors, including Britt and Seagrams Poston. CI-1 told agents that he had witnessed Mr. Brown, on an unspecified date, cooking powder cocaine into crack in the 2nd Avenue residence. CI-1 further stated that he had accompanied Mr. Brown when Mr. Brown delivered two ounces of crack to a man named Derrick Hatfield in late October 2002; Agent Zoltay herself had participated in surveillance of Hatfield on October 29, 2002, when Hatfield delivered two ounces of crack to a DEA CS. A second cooperating individual ("CI-2"), arrested on cocaine trafficking charges, told DEA agents that he had purchased high-quality marijuana from Mr. Brown.

Finally, Agent Zoltay's affidavit provided certain details from independent DEA investigations connecting the 2nd Avenue residence both to Mr. Brown and to drug trafficking activity. She stated that, on January 14, 2003, DEA agents conducting surveillance on the 2nd Avenue residence observed Mr. Brown exit the house to assist Monts in carrying groceries from the green Expedition, which had been seen at the controlled buy from Britt in September 2002. Agents also observed Poston, who had a prior conviction for cocaine possession, enter the residence with a backpack and leave several hours later without it. On January 15, 2003, agents observed Mr. Brown exit a car, unlock the front door of the 2nd Avenue residence, enter, then later exit, lock the door and return to the car. On the same date, Mr. Brown was stopped while driving the green Expedition registered to Monts

in connection with an investigation relating to a stolen Expedition. Also on January 15, 2003, a DEA agent confirmed with a postal inspector that Mr. Brown received mail at the 2nd Avenue residence.

In addition to the specific evidence linking Mr. Brown to drug trafficking activity and to the 2nd Avenue residence, Agent Zoltay provided additional background information drawn from her own experience, including the likelihood that certain types of evidence relating to drug trafficking activity would be found in the residence of a suspected drug trafficker.

On January 16, 2003, a magistrate judge issued a search warrant for the 2nd Avenue home. The officers executed the warrant later that same day. The inventory from the search included numerous firearms and ammunition, a small quantity of marijuana and a marijuana pipe, bullet proof vests, a police scanner and Illinois license plates. R.59, Ex.B.

### 2. Mr. Brown's Motion to Suppress and the Plea Agreement

Before his trial, Mr. Brown moved to suppress the evidence obtained in the search. He challenged the sufficiency of the affidavit to sustain the magistrate judge's probable cause determination. The district court denied the motion and admitted the evidence. In its opinion, the district court first addressed the reliability of the informants. The court identified CI-1 as the key informant and determined that, with respect to this source, sufficient reliability had been established through corroboration by police investigation and by the statements of the other informants. First, the information from CS,

whose reliability is established by the statement in the affidavit that he had assisted in investigations leading to over ten convictions, connected Mr. Brown to Britt, as had CI-1. CI-1's statements regarding deals to Poston were corroborated, the court found, however slightly, by the observations of the agents at the 2nd Avenue residence, who saw Poston enter with the backpack and leave without it. With respect to Mr. Brown's sale of cocaine to Hatfield, a controlled buy by a DEA source from Hatfield corresponded to the date and drug quantity identified by CI-1. The district court concluded that, taken together, these statements tended to establish as reliable the information that CI-1 had purchased cocaine from Mr. Brown and had observed Mr. Brown cooking cocaine in the searched residence. Moreover, reasoned the court, the statements of CI-1 should be credited because they were offered against CI-1's penal interest. The court thus concluded that the DEA had corroborated sufficiently CI-1's statements through investigation. It further determined that, based on the totality of circumstances, the magistrate judge had a substantial basis for concluding that the affidavit contained probable cause to support a finding that Mr. Brown was a drug trafficker.

The court also found that the reliability of CS was supported not only by the agent's direct statement in the affidavit, but also because the CS' statements placing Mr. Brown in the Expedition at the time of the controlled buy from Britt in 2002 were corroborated by an independent investigation connecting Mr. Brown and the Expedition.

Turning to the question of nexus between the alleged criminal activity and the premises, the district court concluded that the requisite connection was established by

the nature of the criminal activity at issue and the probability that evidence of drug dealing may be found where drug dealers live. R.71 at 13 (citing *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)). More specifically, the court concluded that the affidavit sufficiently linked Mr. Brown himself to the 2nd Avenue home. The most critical evidence, in the court's view, was Mr. Brown's possession of a key to the house, suggesting some element of dominion and control over the location. In addition, he was observed carrying in groceries, and he apparently had received mail at the residence. Refusing to accept as a general proposition that a drug dealer's home *categorically* establishes the nexus to criminal activity required to support a warrant, the court found further evidence connecting Mr. Brown's criminal activities to the home was sufficient to establish the requisite nexus. Specifically, CI-1 had stated that he had observed Mr. Brown cooking cocaine into crack at the residence.

The court then turned to the case authorities relied upon by Mr. Brown in support of his lack-of-nexus argument. In the court's view, those cases involved substantially thinner connections to the home. Specifically, Mr. Brown had contended that his case was substantially similar to two cases in which a court had concluded that a nexus to the searched premises was lacking. However, as the district court noted, in one of those cases the only connection was a vehicle registration; in another, there was simply a conclusory statement that a defendant resided at the place to be searched. R.71 at 14-16 (citing *United States v. McNeal*, 82 F. Supp.2d 945, 957-60 (S.D. Ind. 2000), and *United States v. Dickerson*, 975 F.2d 1245 (7th Cir. 1992)). In neither case, concluded the court, did the warrant include specific statements regarding the defendant's

entry or exit from the house, possession of a key, receipt of mail, or illegal activity within the house. Given these facts, and the court's belief that there was a certain inherent likelihood that evidence of drug activity would be found in a drug dealer's home, the court held that there was a substantial basis for probable cause linking the home with Mr. Brown's illegal activities.

The district court then turned to Mr. Brown's final argument that the information provided in the affidavit was stale at the time that it was presented to the magistrate judge. The court concluded that, even though some of the evidence was from several months prior to the application, it nevertheless established a pattern of on-going criminal activity. In such circumstances, the court concluded, "the passage of time becomes less critical," and staleness less of a concern in establishing probable cause. R.71 at 17 (citing *Lamon*, 930 F.2d at 1188). In sum, although calling it a "close case," the district court determined that the warrant should be upheld as supported by probable cause. R.71 at 17.

Turning to the issue of good faith reliance, the district court concluded that, even if the affidavit were insufficient to establish probable cause, it was not so lacking as to render belief by the executing officers in the existence of probable cause "entirely unreasonable." *Id.* at 18 (quoting *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002)). Therefore, the court held in the alternative that the good faith exception was applicable.

Having determined, on alternate grounds, that the search did not violate the Fourth Amendment, the court denied the motion to suppress.

Following this ruling, Mr. Brown pleaded guilty to, and was sentenced on, the conspiracy count only, but

conditioned his plea on his right to appeal the suppression issue.

## B. Proceedings Involving Mr. Wiley

### 1. Investigation

In 2003, the Vigo County Drug Task Force suspected Mr. Wiley of dealing drugs in the Terre Haute area. At the about the same time, Timothy Bailey was arrested and charged with certain methamphetamine and marijuana offenses in Vigo County. As a part of a deal struck with the prosecutor's office, Bailey agreed to cooperate as an informant to the Drug Task Force on Mr. Wiley's drug trafficking activities. Bailey also agreed to participate in a controlled buy of powder cocaine from Mr. Wiley for the Task Force.

On the morning of August 21, 2003, Bailey arranged a meeting with Mr. Wiley to purchase four-and-a-half ounces of powder cocaine for $3000 later that day. Detective Charles Burress of the Terre Haute City Police prepared Bailey for the buy. He strip-searched Bailey and also searched his vehicle prior to the actual purchase, proceeded to a location to view Mr. Wiley's residence and observed Bailey enter the residence with money provided by law enforcement to purchase cocaine. Bailey testified that he requested the cocaine from Mr. Wiley and waited with Mr. Brown for some time, smoking marijuana in the kitchen, while Mr. Wiley and his cousin finished playing a video game. R.71 at 211. According to Bailey, Mr. Brown left sometime before Bailey. *Id.* Bailey then left the house forty-five minutes to an hour later and proceeded to a drop location to meet with Detective Burress and provide to him what was later determined

to be 121 grams of cocaine. Bailey said that he had purchased this cocaine from Mr. Wiley.

Agents conducted surveillance on Mr. Wiley's residence both before and during the buy and remained there after Bailey left while a search warrant was obtained. Mr. Wiley left the residence during this period; agents on the scene asked that a marked police car conduct a traffic stop of the car he was traveling in and detain him. The agents obtained the warrant later that afternoon and searched his home where they discovered crack in the kitchen freezer and other drug paraphernalia.

### 2. The Trial and the Jury Instruction

At trial, Detective Burress and Bailey testified about the controlled buy leading to the search of Mr. Wiley's home. Bailey also testified that he had obtained small amounts of powder cocaine from Mr. Brown for several years during the 1990s in Terre Haute and that, from 1994 until 2001, when he was arrested, he had purchased large amounts of cocaine from Mr. Wiley and Mr. Brown.

The Government also called Michael Collier as a witness. He testified that he had purchased crack from Mr. Brown for several years and that during that time, he came to know Mr. Wiley as "Cuz," Mr. Brown's cocaine source. Collier testified that he previously had shuttled cocaine from Mr. Wiley in Chicago to Mr. Brown in Terre Haute. He also stated that he had traveled with Mr. Brown to Chicago on another occasion. While in Chicago, Mr. Brown had seen Mr. Wiley, among others, and, on returning to Terre Haute, Mr. Brown had cocaine that he had not possessed earlier. Collier told the jury that, in exchange for his testimony, the Government had agreed

not to file an information alleging a prior felony drug conviction. Consequently, Collier avoided the possibility of a sentencing enhancement based on that prior conviction in his future trial on federal cocaine charges. Because of this agreement, his minimum sentence would be ten, not twenty, years.

At the conclusion of a two-day trial, the court instructed the jury. Included among the instructions was the following cautionary instruction pertaining to informant credibility:

> You have heard testimony from several witnesses who:
>
>> (1)  received a benefit from the [G]overnment in connection with this case, namely a promise of a recommendation for a reduced sentence;
>>
>> (2)  stated that they were involved in the commission of the offenses as charged against the Defendants; and
>>
>> (3)  have pleaded guilty to an offense arising out of the same occurrence for which the Defendants are now on trial. Their admission of guilt is not to be considered as evidence against the Defendants on trial.
>>
>> You may give the testimony of such witnesses the weight as you feel it deserves, keeping in mind that it is to be received with caution and weighed with great care.

R.75 at 322. The jury returned a verdict of guilty on a lesser included conspiracy charge and on distribution charges for both powder cocaine and cocaine base. The district court sentenced Mr. Wiley to 395 months' imprisonment.

**II**

**DISCUSSION**

**A. Mr. Brown's Motion to Suppress**

Mr. Brown asks that we review the ruling of the district court denying his motion to suppress the evidence obtained in the search of his home. Whether a warrant affidavit includes sufficient indicia of probable cause is a legal conclusion that we review de novo. *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006).

We have stated:

> A magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005) (internal citation and quotation marks omitted). The probable cause inquiry "is practical, not technical, and we consider the totality of the circumstances." *United States v. Anderson*, 450 F.3d 294, 302 (7th Cir. 2006) (internal citations and quotation marks omitted). However, where "an affidavit is all that was presented to the issuing judge, the warrant's validity rests on the strength of the affidavit." *Id*. When an affidavit is based on informant tips, our probable cause inquiry is also based on the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). However, four factors are particularly relevant as a part of this inquiry. Specifically, we shall pay close at-

tention to: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

Mr. Brown contends that various omissions demonstrate the absence of probable cause. First, Mr. Brown notes that the affidavit fails to establish the credibility of the informants on which it relies, particularly CI-1 and CI-2. With respect to the information provided by CI-1, Mr. Brown argues that the account does not provide a date on material facts, such as the observation of Mr. Brown cooking cocaine. Accordingly, he submits, the facts could be so stale that, at the time the warrant was obtained, probable cause no longer existed. With respect to CI-2, Mr. Brown notes that the affidavit does not provide any evidence of a link to the residence to be searched.

Mr. Brown's argument seeks to separate each assertion in the affidavit and to find an infirmity with all of them. The flaw in Mr. Brown's approach is its failure to recognize the nature of the probable cause inquiry: We, like the issuing magistrate judge, assess the totality of circumstances presented and make a practical, common-sense determination about the existence of probable cause on the basis of the affidavit as a whole. Credibility of informants, nexus to the searched premises and to illegal activity, and the age of the information are all relevant considerations in this inquiry, but no single piece of information need satisfy every relevant consideration

before we may consider it.[2] When specific facts and circumstances are alleged that reasonably could lead a magistrate judge to believe that the fruits or instrumentalities of a crime are to be found at a particular location, we shall give great weight to that determination. *See Newsom*, 402 F.3d at 782.

We now turn to an examination of the facts relevant in assessing the existence of probable cause in the affidavit at issue. Three separate informants provided information linking Mr. Brown to drug activity; all claimed first-hand knowledge of Mr. Brown's drug activities. CS was a source from which the DEA agent preparing the affidavit previously had received reliable information. CI-1's information overlapped to some degree with CS' information, insofar as it linked Mr. Brown to Britt, the controlled-buy target of CS and the DEA. CI-1's information regarding Mr. Brown's residence was corroborated by the independent investigation that revealed his free entry and exit from the home during the relevant period. CI-1's information regarding Mr. Brown's drug activities was corroborated by the information about the separate controlled buy from Hatfield; CI-1 stated that he and Mr. Brown had provided the original cocaine for that transaction. CI-2's information admittedly adds little insofar as it relates to an entirely different drug and

---

[2] This is not a case where the defendant alleges that the affidavit included *false* information (or material omissions) that must be excised (or must be added) before the determination of probable cause is made. *See United States v. Merritt*, 361 F.3d 1005, 1010 (7th Cir. 2004), *vacated and remanded in light of United States v. Booker*, 543 U.S. 220 (2005); *see generally Franks v. Delaware*, 438 U.S. 154 (1978).

points to no specific occurrences tending to corroborate anything the other informants had stated other than the general proposition that Mr. Brown trafficked in narcotics.

Considering the totality of the circumstances described in the affidavit, we conclude that the district court was correct in its ruling that the magistrate judge had a substantial basis for concluding that probable cause existed. We are not persuaded by Mr. Brown's contentions to the contrary. We acknowledge that the affidavit does not provide any statements attesting to the credibility of either CI-1 or CI-2 and that, in fact, the information contained in the warrant about the individuals (that they were cooperating with law enforcement following their own arrests) does not strongly suggest that their accounts are unimpeachable. Nonetheless, CI-1's statement, which provides the most material details, is corroborated generally by CS' and CI-2's identification of Mr. Brown as a narcotics trafficker. CI-1's identification of Mr. Brown with cocaine trafficking specifically and his connection to Britt are both items which are corroborated by CS' statement. On perhaps the affidavit's most convincing and most damaging facts, as far as Mr. Brown is concerned, further corroboration was provided by independent investigation, such as the controlled buys from Britt and Hatfield, which add "great weight" to the reliability of an informant's tip. *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998). In addition, under the facts and circumstances presented here, staleness does not greatly limit the information presented because the information possessed by the DEA indicated an on-going pattern of criminal activity. *United States v. Lamon*, 930 F.2d 1183, 1187-88 (7th Cir. 1991).

Finally, on the issue of nexus, "[p]robable cause does not require direct evidence linking a crime to a particular

place. Instead, issuing judges are entitled to draw rea-
sonable inferences about where evidence is likely to be
found given the nature of the evidence and the type of
offense. In the case of drug dealers, evidence is often found
at their residences." *Anderson*, 450 F.3d at 303 (internal
quotation marks and citations omitted). We agree with
the district court that it would be inappropriate to adopt
a categorical rule that would, in every case, uphold a
finding of probable cause to search a particular location
simply because a suspected drug trafficker resides there;
we nevertheless conclude that, in this case, a belief that a
sufficient nexus exists is supported by the affidavit itself.
Specifically, Agent Zoltay states that CI-1 observed
Mr. Brown cook cocaine into crack and that Poston, who
CI-1 identifies as another narcotics trafficker linked to
Mr. Brown, was observed by police entering the residence
and leaving a bag inside. These statements directly con-
nect the residence to Mr. Brown's trafficking activities. In
consideration of the totality of circumstances presented
to the magistrate judge and given the practical nature of
the probable cause determination, we conclude that the
magistrate judge had a substantial basis to find probable
cause for the warrant to issue.

   Even if probable cause was lacking, we still would not
exclude the evidence obtained unless Mr. Brown also
demonstrated that the officer could not reasonably have
believed that the facts set forth in the affidavit were
sufficient to support the magistrate judge's determina-
tion of probable cause. *Koerth*, 312 F.3d at 866 (citing
*United States v. Leon*, 468 U.S. 897 (1984)).

   We review de novo the district court's conclusion that
law enforcement officers reasonably relied on a search
warrant that is subsequently invalidated. *United States v.
Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006). The decision to

seek a warrant is prima facie evidence that an officer was acting in good faith. *Koerth*, 312 F.3d at 868. The defendant must defeat this presumption with evidence that the issuing magistrate judge wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id*.

Mr. Brown's argument on this point is relatively thin, and makes broad generalizations that "no facts" corroborate informant information, that "no facts" establish that Mr. Brown lived at the residence, and that "no nexus" was made between Brown's dealing and the residence. Appellants' Br. at 24. These statements are not supported by the record. Although corroboration of *some* elements of the informants' statements is lacking, independent police corroboration was a significant factor in establishing the reliability of the informants. Likewise, some evidence, specifically Mr. Brown's possession of a key and the statement of the postal inspector, established Mr. Brown's residence, and statements from CI-1 connected the residence to the drug dealing activity. Accordingly, even if the warrant itself were infirm, Mr. Brown has not made substantial arguments that the good faith exception should not apply. Therefore, the evidence is admissible, and we affirm Mr. Brown's conviction and sentence.

### B.  The Cautionary Instruction at Mr. Wiley's Trial

Mr. Wiley asks that we review the language of the cautionary instruction. At the outset, we note that Mr. Wiley failed to object to this instruction at trial and, therefore, he has forfeited this argument. Forfeited objections to jury instructions are reviewed for plain error. *United States v. Holmes*, 93 F.3d 289, 292 (7th Cir. 1996).

"[E]rror is plain, first of all, if it is clearly an error . . . . But it must also affect the defendant's substantial rights and, in addition, seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005) (internal quotation marks and citations omitted). It must be "so obvious, crucial, and egregious that we may and should correct it even though no objection was made below." *Backwater, Inc. v. Penn-American Ins. Co.*, 448 F.3d 962, 965 (7th Cir. 2006).

The Supreme Court has stated that informant testimony presents special credibility problems, and accordingly, careful instructions to the jury regarding credibility are appropriate. *Banks v. Dretke*, 540 U.S. 668, 701-02 (2004); *see also On Lee v. United States*, 343 U.S. 747, 757 (1952) ("The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions.").

In considering the matter of instructions regarding informant credibility, this court has held that a special instruction is not necessary as a matter of course and that, as a general matter, a general credibility instruction will suffice. *United States v. Cook*, 102 F.3d 249, 252-53 (7th Cir. 1996). Moreover, we have emphasized that the district court is "best situated to detect and deal with threats of unreliable testimony," *id.* at 252, and therefore to determine when such an instruction is advisable or necessary.

Mr. Wiley does not dispute the state of this circuit's law. Nor does he dispute that our review is limited to plain

error because he failed to object at trial. He nonetheless challenges the instruction given by the district court. He contends essentially that the instruction was so ill-tailored to the actual facts of the case that the jury reasonably might not have understood to whom it was directed. Mr. Wiley argues that reversal is required because, by virtue of *giving* an instruction that is not required by this circuit's precedent, the district court clearly signaled that it believed the testimony of the informant witnesses posed a special danger to the fairness of the trial and that a supplementary instruction was *necessary* under the circumstances. Appellants' Br. at 12-13. Mr. Wiley bolsters his contention by pointing to record facts he believes demonstrate reason for particular apprehension regarding the informant testimony in this case, including a lack of a recording of the controlled buy from Bailey and the absence of visual contact by investigators during the buy.

The instruction actually provided at trial refers generally to "witnesses who received a benefit from the government," and identifies that benefit as the promise of a reduced sentence. R.75 at 322. The instruction also states that these witnesses were involved in and pleaded guilty to an offense arising out of the same occurrence for which the defendants are on trial. The problem with this instruction, in Mr. Wiley's view, is that it deviates from the pattern instruction in failing to name specifically the witnesses to whom it should apply and that, on its facts, it cannot be applied to the informants involved in this case.

Although the instruction that was given was ill-tailored to the facts of his case, we are persuaded that any error was harmless under the circumstances.

The informant-witnesses in this case are Bailey and Collier. While the statements of each implicated themselves in the drug trade and in some involvement with Mr. Wiley in that regard, neither was involved directly in any occurrence for which Mr. Wiley currently stood trial and neither pleaded guilty to any conduct arising out of the conspiracy with which Mr. Wiley was charged. Bailey received a reduced sentence in state court in exchange for his cooperation with the investigation and prosecution of Mr. Wiley; Collier did not receive a sentence reduction, as stated in the instruction, but was the beneficiary of a decision not to seek an *enhancement* of his sentence on the basis of a prior felony drug conviction.

Mr. Wiley's argument first presupposes that, in the course of this relatively short trial with relatively few witnesses, the jury would have misunderstood to whom this instruction was meant to apply. He apparently believes that a detailed parsing of the instruction would have confused the jury to such an extent that it would not have applied its cautions to either Bailey or Collier. We cannot accept Mr. Wiley's suggestion of the probable impact of the instruction. We further note that, even if the jury *had* concluded that the instruction did not apply to the informant-witnesses, the ultimate effect would simply be that the general instruction on credibility, which asked the jury to consider witnesses' potential bias and prejudice in determining the weight to give their testimony, would be left to carry the day. It is our duty to consider whether the instructions *in their entirety* may have prejudiced the defendant by confusing or misleading the jury, *see United States v. White*, 443 F.3d 582, 587-88 (7th Cir. 2006), but Mr. Wiley's argument suggests only the remote possibility that the jury could

have been misled into thinking that the specific informant instruction *did not apply to any witness*. If true, that leaves him in precisely the position this circuit's precedent allows: no special instruction on informant credibility.

In addition, both informants admitted the benefits they received during their testimony. In closing arguments, Mr. Wiley's counsel separately drew attention to the particular credibility problem posed by informant testimony. These methods of informing the jury about the dangers of such testimony are specifically approved of by this court as generally providing adequate protection for a defendant facing informant witnesses. *See Cook*, 102 F.3d at 251 ("[T]he argument against giving [a special] instruction is . . . straightforward: the informant's motive can be spelled out by counsel (if it is not admitted on cross-examination) and considered under the general credibility instruction.").

As noted above, we review the instruction to the jury in its entirety. *United States v. Renner*, 238 F.3d 810, 812-13 (7th Cir. 2001). Although we conclude that the instruction was not tailored properly to the facts of the case and failed to identify specifically the witnesses to whom it applied, the fact that the general credibility instruction was given, combined with the absence of any peculiar facts that would indicate the *necessity* of a special instruction, renders any error harmless.

## Conclusion

For the foregoing reasons, the convictions of both defendants are affirmed.

AFFIRMED

WILLIAMS, *Circuit Judge*, concurring. Like my colleagues, I think "it would be inappropriate to adopt a categorical rule that would, in every case, uphold a finding of probable cause to search a particular location simply because a suspected drug trafficker resides there." Op. at 16. I write separately, however, because I fear the majority has come dangerously close to doing exactly that.

Probable cause amounts to a showing "(1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed." *United States v. Grubbs*, 126 S. Ct. 1494, 1500 (2006); *see Illinois v. Gates*, 462 U.S. 213, 238 (1983). The majority concludes that CI-1's undated account of seeing Brown cook crack at the residence and law enforcement's observation of Poston, an alleged cocaine trafficker, entering the home and leaving behind a backpack, establish a nexus between drug trafficking and the premises, thereby sidestepping an ill-advised categorical rule. I cannot be so sure.

In my view, that CI-1 witnessed Brown cook crack at the residence at an unspecified time is of little probative value. The warrant affidavit gives no indication whatsoever as to when Brown was observed cooking crack. And, "[i]n determining whether probable cause exists, magistrates should consider, as one factor, the age of the information in the supporting affidavit." *United States v. Lamon*, 930 F.2d 1183, 1187-88 (7th Cir. 1991) (citing *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987)). Because CI-1's single observation might have been several years old, it could hardly predict whether contraband would be found on the premises on the day of the search. Admittedly, as the majority notes, where an ongoing pattern of

criminal activity is involved, staleness is less of a concern. But, even where ongoing criminal activity is at issue, at some point an event becomes too old to have meaningful predictive value. Given the total lack of information regarding the date of CI-1's observation, we have no way of discerning whether that threshold has been reached here.

Nor does the additional fact that an alleged cocaine trafficker set foot in the home and left behind a backpack get the government over the probable cause hurdle. The officers knew nothing of the backpack's contents or even whether it was purposefully left behind. And, given the three-hour duration of Poston's stay, it is as likely that he entered the home for a social call as for a drug trans-action. In this way, any suspicions regarding the purpose of Poston's visit were just that—suspicions—and where probable cause is concerned, "mere suspicion is not enough." *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir. 1990). On this record, then, I do not think it can be said that officers were likely to find evidence of drug dealing at Brown's home at the time of the search. (And, notably, no cocaine, large sums of money, or drug-transaction records were found during the search.)

In the end, the affidavit did little more than establish that Brown resided at the home and had probably trafficked in crack cocaine outside of his home. Because I am not prepared to conclude that police officers always have probable cause to search the residence of a suspected drug trafficker, I would affirm Brown's conviction not by concluding that there was probable cause for the search, but because the police acted in good faith.

A true Copy:

        Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*