In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3044

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LOUIS L. JAVELL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 233—**John W. Darrah,** *Judge.*

ARGUED MARCH 26, 2012—DECIDED AUGUST 30, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges*.

BAUER, *Circuit Judge.* On March 12, 2009, a federal
Grand Jury indicted Louis L. Javell and his co-defendant,
Aysha Arroyo, on two counts of mortgage-based wire
fraud in violation of Title 18 U.S.C. § 1343. Both de-
fendants pleaded not guilty and proceeded to trial and
on February 22, 2011, a jury returned guilty verdicts
against both defendants. Javell filed a motion for a new

trial; it was denied, and he was sentenced to a term of 12 months and one day in prison on each count, ordered to run concurrently. This appeal followed. We affirm.

## I. BACKGROUND

In December 2005, the FBI began an undercover investigation into mortgage fraud, specifically targeting real estate professionals who were willing to prepare false mortgage loan applications or secure the required documentation to be included with loan applications that they knew to be fraudulent.

In 2007, a cooperating individual ("CI") working with the FBI got in touch with a man named Abraham Skaff, an accountant and tax preparer in the Chicago area. The CI informed Skaff that he had control over a specific parcel of real estate known as the Everett Property. Though he did not own it, the CI told Skaff that he had control over its owner via a power of attorney. The CI explained that he had recruited a straw buyer named Hussein who would purchase the Everett Property using a fake identity known as Emad Adham. Unknown to Skaff, Hussein was actually an undercover agent ("UC") for the FBI. The CI enlisted Skaff to help him find a mortgage company that would assemble and submit a fraudulent loan application to a lender for the purchase of the Everett Property. The CI explained that he planned to sell the property for as much as possible, then let it fall into foreclosure. With this knowledge, Skaff referred the CI to Louis Javell, the owner of a mortgage brokerage company called Bell Capital.

Toward the end of June 2007, a loan processor and employee of Javell's named Aysha Arroyo began assisting the CI in assembling a loan application in Adham's name. A few weeks later on July 25, the CI, the UC, Javell, Arroyo, and Skaff met at the Bell Capital offices, which were under surveillance by the FBI, to discuss a problem with Adham's loan application. At the meeting, Javell and Arroyo explained that Adham's bank account had not been opened for the requisite number of days, and that this would be grounds for the lender's rejection of the application. As a solution, Arroyo suggested Adham find someone with a seasoned bank account who would be willing to temporarily add Adham's name to it. Alternatively, Arroyo offered to contact someone she knew at a local bank who, for a fee, would be willing to back-date an account with Adham's name on it. The CI and the UC opted for the latter option, but when Arroyo's contact did not pan out, the FBI added Adham's name to the seasoned bank account of another fictitious identity created by the FBI. Soon after, the completed application was submitted by Bell Capital.

On August 1, the loan having been approved for $150,000, the CI and the UC closed on the Everett Property and Javell was issued a check for $5,234 which was deposited into Bell Capital's business account.

In March 2009, Javell and Arroyo were indicted. After Arroyo's arrest, she waived her *Miranda* rights and was interviewed by the FBI. During the interview, Arroyo admitted she had worked with Skaff on prior occasions,

that she knew that some of the tax returns and subsequent documents provided by Skaff were fraudulent, and that she submitted them to lenders anyway. The agents played for Arroyo portions of surveillance recordings from inside the Bell Capital offices; Arroyo identified herself on one of the recordings. When the agents asked what she was discussing in the recording, Arroyo admitted to speaking with a new customer and explaining to him, as she did for the CI and the UC, that she had a contact at a bank who would open a new bank account for him, back-date it, and issue him a fraudulent Verification of Deposit.

Both Javell and Arroyo pleaded not guilty and a jury trial was scheduled. Prior to trial, the government informed both defendants that it intended to introduce Arroyo's post-arrest statements through the testimony of Agent Secor, the FBI agent who had interviewed Arroyo and composed a post-interview report. Javell argued that the admission of Arroyo's post-arrest statements via Agent Secor violated the Confrontation Clause of the Sixth Amendment. On Javell's motion, the district court granted a *Bruton* hearing and ordered the government to submit a *Bruton* statement detailing exactly what they intended to introduce at trial. See *Bruton v. United States*, 391 U.S. 123 (1968). The government complied. The statement specified the exact information from the post-arrest report Agent Secor would testify to, with any facially incriminating references to Javell or Bell Capital redacted. The district court reviewed the government's *Bruton* statement and made further redactions in an effort to remove any indirect references to Javell or Bell Capital.

At trial, the government's *Bruton* statement was never published to the jury, but the government did elicit testimony from Agent Secor which comported with the *Bruton* statement approved by the district court; neither the government nor Agent Secor made any references to the redacted portions at trial. Ultimately, the jury found Javell and Arroyo guilty.

## II. ANALYSIS

Javell claims the district court violated *Bruton*, its progeny, and Javell's Sixth Amendment rights by admitting the post-arrest statements made by Arroyo and by failing to properly instruct the jury about the rules of non-imputation. According to Javell, Arroyo's post-arrest statements directly implicated Javell and had the jury not heard those statements, Javell would not have been convicted. We disagree.

### A. Javell's *Bruton* Claim

Although this Court typically reviews a district court's evidentiary rulings for an abuse of discretion, a district court's application of the principles promulgated in *Bruton* and its progeny is reviewed *de novo*. *United States v. Green*, 648 F.3d 569, 574 (7th Cir. 2011); *United States v. McGowan*, 590 F.3d 446, 453 (7th Cir. 2009).

The Sixth Amendment to the United States Constitution declares, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by witnesses against him . . . ." U.S. CONST. amend. VI.

To review: in *Bruton v. United States*, Bruton and his accomplice had been charged with armed postal robbery, and at joint-trial, a postal inspector testified that the accomplice had orally confessed to having committed the crime with Bruton, but the accomplice himself never took the stand. *Bruton*, 391 U.S. at 124. Both Bruton and the accomplice were convicted. *Id*. On appeal to the Eighth Circuit, the accomplice's conviction was set aside because the court ruled the confession had been obtained in violation of his *Miranda* rights. *Id*. "However, [the Eighth Circuit] . . . affirmed Bruton's conviction because the trial judge instructed the jury that although [the accomplice]'s confession was competent evidence against [the accomplice,] it was inadmissible hearsay against [Bruton] and therefore had to be disregarded in determining [Bruton]'s guilt or innocence." *Bruton*, 391 U.S. at 124-25. See also, *Delli Paoli v. United States*, 352 U.S. 232 (1957) (holding that inadmissible hearsay against a defendant could still be entered into evidence as long as the declarant was the co-defendant and the jury was given proper limiting instructions not to consider the statements against the defendant). On retrial, the accomplice was acquitted. *Id*. at 125-26. On certiorari, the Supreme Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton]'s guilt, admission of [the accomplice]'s confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id*. at 126.

Twenty-one years later, *Richardson v. Marsh* refined *Bruton*. In that case, a defendant and his co-defendant

were charged with murder and assault. *Richardson v. Marsh*, 481 U.S. 200, 202 (1987). At trial, the co-defendant did not testify but his confession was admitted into evidence. *Richardson*, 481 U.S. at 203-04. All references to the defendant and his participation in the crime were redacted from the confession and the jury was instructed not to consider the co-defendant's confession with regard to the defendant. *Id*. However, the defendant's subsequent testimony linked him to the co-defendant's confession and the defendant was convicted. *Id*. at 205. The defendant's appeal was denied by the Michigan Court of Appeals, and his writ of habeas corpus was denied by the district court. *Id*. However, the Sixth Circuit reversed, relying on *Bruton,* and ruled that an omission or redaction of a reference to the defendant was effectively diminished if forthcoming evidence would ultimately connect the defendant to the non-testifying co-defendant's "powerfully incriminating" confession. *Id*. at 205-06 (quoting *Marsh v. Richardson*, 781 F.2d 1201, 1213 (6th Cir. 1986)).

On certiorari, the Supreme Court upheld the admissibility of the co-defendant's confession and stated, "[t]he Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when, . . . the confession is redacted to eliminate not only the [defendant]'s name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211.

In *Gray v. Maryland*, Gray and Bell were indicted for beating a man to death. *Gray v. Maryland*, 523 U.S. 185, 188

(1998). At trial, the prosecution sought to enter Bell's confession which implicated Gray. *Gray*, 523 U.S. at 188. The court ordered the confession be redacted and it was subsequently read into evidence during trial and published in written form to the jury. *Id*. However, the confession's redactions only went as far as inserting a blank space or the word "deleted" or "deletion" where Gray's name otherwise would have been. *Id*. The confession was accompanied by an instruction to the jury that the confession be considered only with respect to Bell, and that it was not to be considered with respect to Gray. *Id*. at 189. Both Bell and Gray were convicted and Gray appealed. *Id*. The Maryland Court of Special Appeals set aside Gray's conviction, ruling that admitting the confession violated *Bruton*. *Id*. However, Maryland's supreme court reinstated the conviction. *Id*. On certiorari, the U.S. Supreme Court found that Bell's confession contained inferences and implications which were distinguishable from *Bruton* and *Richardson* because they directly incriminated Gray, as opposed to incriminating him "only when linked with evidence introduced later at trial." *Id*. at 196 (citing *Richardson*, 481 U.S. at 208 (quotations omitted)). "Moreover," the Court continued, "the redacted confession with the blank prominent on its face . . . facially incriminates [Gray] . . . and the accusation that the redacted confession makes is more vivid than inferential incrimination, and hence more difficult to thrust out of mind." *Gray*, 523 U.S. at 196 (citing *Richardson*, 481 U.S. at 208-09 (internal quotations omitted)). In other words, so long as it was accompanied by a proper limiting instruction to

the jury and it did not facially incriminate the defendant, the co-defendant's redacted confession was admissible at trial.

Similarly in the recent mortgage-fraud case *United States v. Green*, the government introduced the confession of a co-defendant with the defendant's name redacted and replaced with "straw buyer." *United States v. Green*, 648 F.3d 569, 573 (7th Cir. 2011). Later, evidence was introduced making it clear to the jury that "straw buyer" was a substitute for the defendant's name. *Green*, 648 F.3d at 573. The defendant moved for a mistrial but the district court denied the motion. *Id*. at 574. On appeal, this Court affirmed the district court's ruling that the use of "straw buyer" in the redacted confession "was not so obvious a reference to the defendant as to violate *Bruton*," and that "[t]aken alone, nothing in the [co-defendant]'s statement . . . suggest[ed] that the [defendant] was the straw buyer." *Id*. at 575-76.

Despite Javell's repeated arguments to the contrary, not one of the cases above support his position that the government's *Bruton* statement violated his Sixth Amendment rights. Each of the aforementioned cases dealt with redacted confessions which facially incriminated or indirectly implicated the defendant. The fact remains that in Javell's case, nothing in the government's *Bruton* statement was facially incriminating, nor did any part of the statement even reference Javell indirectly, as for instance in *Greene*, by redacting and replacing his name with a more innocuous phrase. Instead, any reference to Javell or Bell Capital that was not already

redacted by the government, was redacted by the district court at the *Bruton* hearing.

For example, the government's original *Bruton* statement included a sentence which read, "[a]s a Loan Processor, it is Arroyo's responsibility to take loan applications and other mortgage-related paperwork from the Loan Officers *at [redacted]* and ensure the paper is in order prior to submitting the paperwork for loan approval." (Emphasis added.) The district court ordered the word "at" to be redacted because the court thought it ran "the risk of facially calling attention to Bell [Capital]," and the district court knew that such a redaction would prevent a *Gray* scenario from occurring. The district court made four more similar redactions to the government's *Bruton* statement which resulted in a statement that if presented in isolation from other evidence, would prevent a jury from knowing anyone other than Arroyo was involved; after the final redactions were made, there was no indication that Javell or Bell Capital even existed.

This poses the question: What if the government had never introduced their *Bruton* statement or any other evidence of Arroyo's confession? Could a reasonable juror still have concluded that Javell was guilty of mortgage-based wire fraud? Yes. The government properly introduced a plethora of other evidence against Javell, including recordings of Javell discussing the fraudulent mortgage application and the need for Adham to secure a seasoned bank account. Additionally, the government also presented evidence to

show that after closing on the Everett property, Javell advised the CI and the UC on how best to let the property fall into foreclosure; that failing to make the first few mortgage payments could raise red flags with the FBI, who Javell had heard was investigating such things.

The government's *Bruton* statement did not violate *Bruton* or its progeny and the district court was correct to admit it. Javell's Sixth Amendment rights were not affected. We find no error.

## B.  Javell's Jury Instruction Claim

Next, Javell argues that the district court erred by failing to instruct the jury to only consider Arroyo's post-arrest statements with respect to Arroyo; that they should not be imputed to Javell.

At trial, Javell never objected to the district court's jury instructions, nor did he request that the judge give a specific, clarifying instruction. As such, we review for plain error. See *United States v. Courtright*, 632 F.3d 363, 371 (7th Cir. 2011). "To establish plain error, [Javell] must show that there was an actual error, that the error was plain, that the error affected [his] substantial rights, and that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Courtright*, 632 F.3d at 371 (citing *United States v. Canady*, 578 F.3d 665, 670 (7th Cir. 2009) (internal quotations omitted)). To be considered plain, an error must be "so obvious, crucial, and egregious, that we may and

should correct it even if no objection was made below."
*Courtright*, 632 F.3d at 371 (quoting *Backwater, Inc. v. Penn-American Ins. Co.*, 448 F.3d 962, 965 (7th Cir. 2006)). Furthermore, "[p]lain error review of jury instructions is particularly light handed, and we will reverse only if the error was of such a great magnitude that it probably changed the outcome of the trial." *Courtright*, 632 F.3d at 371 (citing *United States v. Moore*, 115 F.3d 1348, 1362 (7th Cir. 1997) (internal quotations omitted)).

At the *Bruton* hearing prior to trial, the district court summarized *Bruton* and its progeny and noted the need for proper limiting instructions. At trial, when Agent Secor testified as to Arroyo's post-arrest statements, the district court instructed the jury "to accept the last answer made by Agent Secor regarding the seasoned bank account only insofar as it bears on the issues in this case regarding Ms. Arroyo." Later, prior to jury deliberations, the district court instructed the jury as to Seventh Circuit Pattern Jury Instruction 3.02:

> You have received evidence of a statement said to be made by Defendant Aysha Arroyo to law enforcement officers. You must decide whether the defendant did in fact make the statement.

Notably, and as Javell ardently calls to our attention, the district court omitted the last line of the instruction, which reads, "[y]ou may not consider this statement as evidence against any defendant other than the one who made it."

It is possible that by singling out only one of the statements made by Agent Secor the district court inad-

vertently communicated to the jury that the remainder of Agent Secor's testimony could be properly imputed to Javell and it is unclear why the district court chose to omit the last sentence of 3.02. Nevertheless, both the instruction regarding Agent Secor's testimony and the omission of 3.02's last sentence are of little consequence. "In reviewing the sufficiency of jury instructions, we look to the instructions as a whole to determine whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *United States v. Johnson*, 584 F.3d 731, 739 (7th Cir. 2009) (citing *United States v. Berndt*, 530 F.3d 553, 555 (7th Cir. 2008) (internal quotations omitted)). "We would only reverse if the instructions viewed in their entirety, mislead the jurors to [Javell]'s prejudice." *Johnson*, 584 F.3d at 739 (citing *United States v. Smith*, 223 F.3d 554, 556 (7th Cir. 2000) (internal quotations omitted)). Though juries often benefit from hearing concrete instructions that specify exactly which evidence and testimony should be considered with respect to each co-defendant, neither party found it necessary to request such definition at trial, and nor did we, upon review of the instructions and record as a whole, find that the jury was misled or misinformed as to their responsibilities.

Furthermore, the omission did not result in such prejudice to Javell that would require us to reverse for a finding of injustice. As we previously mentioned, plenty of evidence was properly introduced at trial, independent of Arroyo's post-arrest statements, which implicated Javell.

Javell has not met his burden. Finding no plain error by the district court, we conclude that not only were Javell's substantial rights unharmed, but that the fairness, integrity, and public reputation of these judicial proceedings are intact.

## III. CONCLUSION

For the reasons stated herein, we AFFIRM the judgment of the district court.